## BANK OF MARIN *v.* ENGLAND, TRUSTEE IN BANKRUPTCY.

No. 63.   Argued October 20, 1966.—Decided November 21, 1966.

*Edgar B. Washburn* argued the cause for petitioner. With him on the briefs were *Carlos R. Freitas* and *Bryan R. McCarthy.*

*Thomas B. Donovan* argued the cause for respondent. With him on the brief was *John Walton Dinkelspiel.*

*John P. Austin* filed a brief for the California Bankers Association, as *amicus curiae,* urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The question presented by this case is whether a bank which honored checks of a depositor drawn before its bankruptcy but presented for payment after it had filed a voluntary petition in bankruptcy, is liable to the trustee for the amount of the checks paid where the bank had no knowledge or notice of the proceeding. The trustee applied to the referee for a turnover order requiring petitioner bank to pay to the trustee the amount of the checks and in the alternative asking the same relief against the payee. The referee determined that petitioner and the payee were jointly liable to the trustee. The District Court affirmed. Only petitioner appealed and the Court of Appeals affirmed the District Court. 352 F. 2d 186. We granted certiorari because of the importance of the question presented. Cf. *Rosenthal* v. *Guaranty Bank & Trust Co.,* 139 F. Supp. 730; *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U. S. 306.

## I.

We were advised on oral argument that the joint judgment rendered against petitioner, the bank, and the payee of the checks was paid in full by the payee and that at present respondent's sole financial interest in this litigation is protection against imposition of costs under our Rule 57. It is therefore suggested that the case is moot.

We do not agree. Whatever might be the result if costs alone were involved (cf. *Heitmuller* v. *Stokes,* 256 U. S. 359, 362) this case should not be dismissed. We are advised that the payee has paid the joint judgment and has filed with the bankruptcy court and served on petitioner a demand for contribution from it respecting sums paid in satisfaction of the judgment. Thus petitioner is still subject to a suit because of the original judgment as to its liability. We would, therefore, strain the concepts of mootness if we required petitioner to start all over again when the payee sues it for contribution.

## II.

Section 70a of the Bankruptcy Act, 52 Stat. 879, 11 U. S. C. § 110 (a), provides that a trustee in bankruptcy is vested "by operation of law" with the title of the bankrupt as of the date of the filing of the petition to described kinds of property "including rights of action." § 70a (5). But we do not agree with the Court of Appeals that the bankrupt's checking accounts are instantly frozen in the absence of knowledge or notice of the bankruptcy on the part of the drawee. The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition. See *Zartman* v. *First National Bank,* 216 U. S. 134, 138. The relationship of bank and depositor is that of debtor and creditor, founded upon contract. The bank has the right and duty under that contract to honor checks of its depositor properly drawn and presented (*Allen* v. *Bank of America,* 58 Cal. App. 2d 124, 127, 136 P. 2d 345, 347; *Weaver* v. *Bank of America,* 59 Cal. 2d 428, 431, 380 P. 2d 644, 647; and see *Anderson National Bank* v. *Luckett,* 321 U. S. 233), absent a revocation that gives the bank notice prior to the time the checks are accepted or paid by the bank.

102

See *Hiroshima* v. *Bank of Italy,* 78 Cal. App. 362, 369, 248 P. 947, 950. The Court of Appeals held that the bankruptcy of a drawer operates without more as a revocation of the drawee's authority. 352 F. 2d, at 191. But that doctrine is a harsh one that runs against the grain of our decisions requiring notice before a person is deprived of property (*Mullane* v. *Central Hanover Bank & Trust Co., supra,* at 314–318; *Walker* v. *City of Hutchinson,* 352 U. S. 112; *Schroeder* v. *City of New York,* 371 U. S. 208), a principle that has been recognized and applied in proceedings under the Bankruptcy Act. *New York* v. *New York, N. H. & H. R. Co.,* 344 U. S. 293, 296–297. The kind of notice required is one "reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action." *Mullane* v. *Central Hanover Bank & Trust Co., supra,* at 314. We cannot say that the act of filing a voluntary petition in bankruptcy *per se* is reasonably calculated to put the bank on notice. Absent revocation by the drawer or his trustee or absent knowledge or notice of the bankruptcy by the bank, the contract between the bank and the drawer remains unaffected by the bankruptcy and the right and duty of the bank to pay duly presented checks remain as before. In such circumstances the trustee acquires no rights in the checking account greater than the bankrupt himself.

Section 70d (5), 52 Stat. 882, 11 U. S. C. § 110 (d)(5), provides, with exceptions not relevant here, that "no transfer by or in behalf of the bankrupt after the date of bankruptcy shall be valid against the trustee." And in case of a voluntary petition (with exceptions not material here) the filing operates as an adjudication. § 18f, 73 Stat. 109, 11 U. S. C. § 41 (f). It is therefore argued with force that payment by the drawee of a drawer bankrupt's checks after the date of that filing is a "transfer" within the meaning of § 70d (5).

Yet we do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction. Section 2a, 52 Stat. 842, 11 U. S. C. § 11 (a); *Pepper* v. *Litton,* 308 U. S. 295, 304–305; *Securities & Exchange Commission* v. *U. S. Realty & Imp. Co.,* 310 U. S. 434, 455. We have said enough to indicate why it would be inequitable to hold liable a drawee who pays checks of the bankrupt duly drawn but presented after bankruptcy, where no actual revocation of its authority has been made and it has no notice or knowledge of the bankruptcy. The force of §§ 70d (5) and 18f can be maintained by imposing liability on the payee of the checks where he has received a voidable preference or other voidable transfer. The payee is a creditor of the bankrupt, and to make him reimburse the trustee is only to deprive him of preferential treatment and to restore him to the category of a general creditor. To permit the trustee under these circumstances to obtain recovery only against the party that benefited from the transaction is to do equity.

*Reversed.*

Mr. Justice Harlan, dissenting.

The Court, in its haste to alleviate an indisputable inequity to the bank, disregards, in my opinion, both the proper principles of statutory construction and the most permanent interests of bankruptcy administration. I must dissent.[1]

The Act itself is unambiguous. Section 70a vests title to the bankrupt's property in the trustee "as of the date of the filing of the petition." 52 Stat. 879, 11

---

[1] Like the Court, I believe that this case is not moot. In addition to what has been said by the majority, compare *Fishgold* v. *Sullivan Drydock & Repair Corp.,* 328 U. S. 275, and *Aeronautical Industrial Dist. Lodge* v. *Campbell,* 337 U. S. 521.

U. S. C. § 110 (a). Section 70d nonetheless sustains bona fide transfers of the property made after filing and "before adjudication or before a receiver takes possession . . . whichever first occurs. . . ." 52 Stat. 881, 11 U. S. C. § 110 (d). Transactions excluded from the shelter of § 70d are, so far as pertinent, within § 70d (5), which provides that "no [such] transfer by or in behalf of the bankrupt . . . shall be valid against the trustee . . . ." 52 Stat. 882, 11 U. S. C. § 110 (d)(5). The adjudication of voluntary petitions results by operation of law from filing. § 18f, 73 Stat. 109, 11 U. S. C. § 41 (f).

In the situation before us, the remaining issue is accordingly whether this transfer occurred before or after September 26, the day on which Seafoods filed its petition in bankruptcy and was perforce adjudicated bankrupt. I do not understand petitioner to contend, or the Court to suggest that this occurred at a time other than presentment of the checks, October 2. Given the law of California, by which a check is not a *pro tanto* transfer of the drawer's rights until presentment, I cannot see that another moment is possible. California Civil Code § 3265e; California Commercial Code § 3409. In sum, I find it unavoidable that the Act's plain words hold the bank liable to the trustee for the value of its payment on Seafoods' behalf.[2]

I do not suggest that this Court should confine its attention to the unadorned terms of the Bankruptcy

---

[2] It is true that the negotiability proviso to § 70d (5) has once been held to protect a bank in analogous circumstances. *Rosenthal v. Guaranty Bank & Trust Co.,* 139 F. Supp. 730. The proviso's legislative history throws little light on its intended scope. It appears inapplicable here. First, presentment is not strictly a negotiation. Second and more important, other constructions are more consonant with the balance of § 70d. Cf. 70 Harv. L. Rev. 548, 550. 4 Collier, Bankruptcy ¶ 70.68, at 1502, n. 3 (14th ed. 1964). I do not understand the Court to rely upon the proviso.

Act. Nonetheless, where Congress has pointed so unmistakably in one direction, prudence and simple propriety surely require that we examine carefully the impulses which beckon us to another. The Court explains its resolution of this case by two apparently alternative contentions. I am unpersuaded that either permits us to circumvent the Act's demands.

The Court first intimates, without expressly deciding, that the bank is shielded by its contractual right to a seasonable revocation of its duty to honor checks drawn upon it. The Court vouches for this the doctrine that a trustee in bankruptcy takes rights no wider or more complete than his bankrupt had. It is doubtless true that a trustee is not a bona fide purchaser or encumbrancer, and that he ordinarily assumes the bankrupt's property subject to existing claims, liens, and equities. *Hewit* v. *Berlin Machine Works*, 194 U. S. 296. Unfortunately, these maxims scarcely suffice to decide this case. They are interstitial rules, valid no further than the Act's positive requirements permit. *First National Bank* v. *Staake,* 202 U. S. 141. 4 Collier, Bankruptcy ¶ 70.04, at 954.2. The Act in several respects clothes the trustee in powers denied to his bankrupt: A trustee may thus avoid, although his bankrupt may not, transactions deemed fraudulent under the Act, liens obtained and preferential transfers completed within four months of bankruptcy, and statutory liens within the prohibition of § 67c (2). 4 Collier, Bankruptcy ¶ 70.04, at 957.

The Court does not assert that this transfer is protected by § 70d. I understand it instead to concede that, equitable considerations aside, the bank's payment is invalid against the trustee. I must conclude that the Court has reasoned that a contractual defense retained against the bankrupt suffices to preclude use of a power expressly conferred upon the trustee. If this is the Court's meaning, it has traversed both logic and author-

ity, and has emasculated the powers given to trustees under the Act.

The Court's principal contention seems to be that equitable considerations oblige it to release the bank from liability. Its premise plainly is that equity is here a solvent to which we may appropriately resort; I am unable to accept that premise. This is not a case in which the statute is imprecise. Nor is it a case in which the legislature's intentions have been misshapen by the statute's words; even a cursory examination of the history of § 70 will evidence that its terms faithfully reflect Congress' purposes.

The Act of 1898 vested title to the bankrupt's property in the trustee at adjudication, but contained nothing to prevent its dissipation in the interval after filing.[3] The courts were therefore left free to devise protective rules to reconcile the competing interests of the estate and of those who dealt with the bankrupt in this period. The fulcrum of those rules was the proposition that a "petition [in bankruptcy] is a *caveat* to all the world, and in effect an attachment and injunction." *Mueller v. Nugent,* 184 U. S. 1, 14. The courts softened its severity by a series of exceptions, either employing or distinguishing it as equity or convenience suggested. The result, as a principal draftsman of the Chandler Act reforms described it, was that "no consistent theory of protected transactions has been developed," and the situation was "conducive to confusion and uncertainty, with potentialities for argument, 'bluffing,' litigation, expense and de-

---

[3] This Court had held that despite the cleavage at adjudication, the trustee took the title as it was at filing. *Everett v. Judson,* 228 U. S. 474. The situation is summarized in McLaughlin, Aspects of the Chandler Bill to Amend the Bankruptcy Act, 4 U. Chi. L. Rev. 369, 383.

lay."[4] The law consisted essentially of "nebulous vagaries."[5]

The Chandler Act stemmed chiefly from a sustained investigation of these and other problems by the National Bankruptcy Conference.[6] Its members were the Act's principal draftsmen. The revisions they made to § 70 entirely restructured the basis both of the trustee's title and of the protection given to transactions which occur after filing. Their purpose, as one of them explained to the Chandler subcommittee, was to provide "a clear statutory basis" to the issues of title and protected transactions, in "lieu of a crazy quilt of contradictory judicial statements."[7] The effect of their revisions was to define "the full extent to which bona fide transactions with the bankrupt, *after* bankruptcy, will be protected."[8]

Adjudication and receivership were plainly expected to mark the perimeters of this protection. Various factors determined this choice. First, none of the several exceptions to *Mueller* v. *Nugent* reached transactions

---

[4] McLaughlin, Amendment of the Bankruptcy Act (pts. 1 & 2), 40 Harv. L. Rev. 341, 583, at 615. The same conclusions are reached by Weinstein, The Bankruptcy Law of 1938, at 161.

[5] 4 Collier, Bankruptcy ¶ 70.66, at 1495.

[6] A brief history of the Conference's work may be found in McLaughlin, 4 U. Chi. L. Rev., at 375.

[7] Hearing before the House Committee on the Judiciary on H. R. 6439, 75th Cong., 1st Sess., 212. Professor McLaughlin quoted from his article in 40 Harv. L. Rev. 341. He subsequently acknowledged that § 70 would permit an area in which the courts could continue to balance the competing interests of the parties. *Ibid.* In light of the importance attached to adjudication as a line of cleavage, and the comparative insignificance intended for § 70d in voluntary proceedings, see *infra,* I do not believe that this acknowledgment can be taken to reach this case.

[8] 4 Collier, Bankruptcy ¶ 70.67, at 1500.

which occurred after adjudication.[9] More important, once the draftsmen had elected to vest title in the trustee from filing, they were chiefly anxious to shield debtors from the consequences of unwarranted involuntary petitions.[10] They feared that such a petition might ruin a debtor by inducing others to avoid dealings with him. Section 70d was expected to immunize bona fide transactions after filing, and thus to encourage dealings with the solvent debtor. There is no need for such protection after adjudication. Finally, adjudication and receivership signal the beginning of bankruptcy administration, and they are therefore both appropriate moments at which to forbid all further meddling with the estate.[11]

It is equally plain that the protection offered by § 70d must have been intended principally for involuntary proceedings. There are several indications of this. Most important, the hazard to which the section was chiefly directed, the consequences of an unwarranted petition upon a debtor's credit, is entirely absent from voluntary proceedings. Thus, the discussion of this problem before the Chandler subcommittee was explic-

---

[9] 4 Collier, Bankruptcy ¶ 70.66, at 1498. In the one apparent exception, *Jones* v. *Springer*, 226 U. S. 148, a dredge had been placed in the hands of a receiver under an attachment levied before filing. The Court concluded that this sufficed to avoid the ordinary limitations imposed by adjudication.

[10] Hearing before the House Committee on the Judiciary on H. R. 6439, 75th Cong., 1st Sess., 211. Professor McLaughlin described this to the subcommittee as "the next most pressing problem." He concluded that "[w]e have put in a provision [70d] to cover that [the problem of unwarranted petitions]." His explanation to the subcommittee of § 70d was based entirely on this problem. There is of course evidence that the draftsmen also expected to alleviate unfairness which § 70a might otherwise produce. See Analysis of H. R. 12889, House Committee on the Judiciary, 74th Cong., 2d Sess., 230 (Comm. Print 1936).

[11] MacLachlan, Handbook of the Law of Bankruptcy 346.

itly confined to involuntary petitions.[12] Further, the protection offered by § 63b, which closely supplements § 70d, extends only to involuntary proceedings.[13] Finally, the draftsmen must surely have known that the adjudication of voluntary petitions ordinarily followed quickly and routinely after filing.[14] It was certainly not unknown for adjudication to occur on the day of filing.[15] The draftsmen could only have intended that any protection given in voluntary proceedings by § 70d be fleeting and minimal.[16]

In short, § 70 was tailored to provide carefully measured protection to bona fide transfers. It was intended to preclude further confusion and uncertainty. There is every indication that its terms faithfully reflect its purposes.

I fully sympathize with the discomfort of the bank's position, but I cannot escape the impact of what

---

[12] Hearing before the House Committee on the Judiciary on H. R. 6439, 75th Cong., 1st Sess., 211.

[13] 52 Stat. 873, 11 U. S. C. § 103 (b). Section 63b provides that "In the interval after the filing of an involuntary petition and before the appointment of a receiver or the adjudication, whichever first occurs, a claim arising in favor of a creditor by reason of property transferred or services rendered by the creditor to the bankrupt for the benefit of the estate shall be provable to the extent of the value of such property or services."

[14] MacLachlan, Handbook of the Law of Bankruptcy 40.

[15] See, e. g., New York County National Bank v. Massey, 192 U. S. 138.

[16] Further, the 1959 amendments to § 18, by which adjudication results by operation of law from filing, were adopted upon the recommendation of the Judicial Conference and its Committee on Bankruptcy Administration. Annual Report of the Proceedings of the Judicial Conference, 1958, p. 28. The bill received the endorsement of the National Bankruptcy Conference. H. R. Rep. No. 241, 86th Cong., 1st Sess., 2. It therefore seems quite improbable that the 1959 amendments could have inadvertently excluded voluntary proceedings from the scope of § 70d.

Congress has done.[17]  The Court has not found § 70 constitutionally impermissible.[18]  It has simply measured the statute by the standard of its own conscience, and concluded that equity requires a result which the statute forbids.  I had thought it well settled that equity may supplement, but may never supersede, the Act.  1 Collier, Bankruptcy ¶ 2.09, at 171–172.  The Act's language is neither imprecise nor infelicitous; I can therefore see no room for the interposition of equity.

More important, the Court today permits the dilution of the Chandler amendments to § 70.  The Court's disposition of this case may be taken to suggest that whenever equity is thought strongly to demand relief from the strictures of the Act, further exceptions may be appropriately created to the statutory scheme.  I fear that the Court may have set in motion once more the protracted process which before 1938 resulted in "confusion and uncertainty," "litigation, expense and delay."

---

[17] Judge Soper's reasoning in *Lake* v. *New York Life Insurance Co.*, 218 F. 2d 394, 399, seems entirely persuasive: "Whether the line which has been drawn is the best possible solution of the problem is not for the courts to say.  The line has in fact been drawn by competent authority and it is no longer necessary for the courts to make the attempt, which has not been conspicuously successful in the past, to decide cases on the facts as they arise . . . ."  See also *Kohn* v. *Myers*, 266 F. 2d 353.

[18] I cannot in any event accept petitioner's contention that these provisions have denied it due process.  In exercise of its express constitutional authority over bankruptcy, Art. I, § 8, Congress has attached great importance to swift and efficient administration; to this purpose it devised a statutory scheme by which it balanced the competing rights of the interested parties.  Congress' purposes are permissible, and the scheme it has adopted is reasonably calculated to achieve those purposes.  In this context I cannot say that the Constitution requires that all whose rights may be reached by bankruptcy proceedings must first have actual notice of them.  Cf. *Hanover National Bank* v: *Moyses*, 186 U. S. 181.

If so, the Chandler amendments will have had no more permanent result than to wipe the judicial slate momentarily clean.

I would affirm the judgment of the Court of Appeals.

MR. JUSTICE FORTAS.

I would vacate the judgment. I believe that we do not have before us a case or controversy between the parties of record.

Respondent, the trustee in bankruptcy, has no substantial stake in the outcome of this litigation and is not an adversary in the usual sense. On February 24, 1964, the referee in bankruptcy ruled that both the petitioner bank and the payee on the bankrupt's checks were liable to the trustee. On May 19, 1964, the payee paid the trustee in full and has not been a party to this litigation since that time. Having received full payment, the trustee has no interest in the litigation except professional curiosity as to the question of law—and he so apprised the District Court, the Court of Appeals, and this Court. See Brief for Respondent, p. 2. See also Petition for Certiorari, p. 4. Nevertheless, the bank, also eager for an answer to this intriguing legal problem and facing a claim from the payee for contribution, continued the litigation against the trustee, and the trustee obligingly went along. The respondent trustee's only financial interest is admittedly confined to the question of court costs,[1] incurred as a volunteer.

---

[1] An unbroken line of cases establishes the rule that controversy as to costs alone does not salvage an otherwise moot case. See, e. g., *Walling* v. *Reuter Co.*, 321 U. S. 671, 677 (1944); *United States* v. *Anchor Coal Co.*, 279 U. S. 812 (1929); *Alejandrino* v. *Quezon*, 271 U. S. 528, 533–536 (1926); *Brownlow* v. *Schwartz*, 261 U. S. 216 (1923); *Heitmuller* v. *Stokes*, 256 U. S. 359, 362–363 (1921); Robertson & Kirkham, Jurisdiction of the Supreme Court

There are two reasons of substance why the Court should not, in this case, decide the important statutory question presented. First, this is not an adversary proceeding, and has not been one since respondent received full payment in 1964. It is basic to our adversary system to insist that the courts have the benefit of the contentions of opposing parties who have a material, and not merely an abstract, interest in the conflict. Adverse parties—adverse in reality and not merely in positions taken—are absolutely necessary. See, *e. g.*, *Muskrat* v. *United States*, 219 U. S. 346, 361–363 (1911); *California* v. *San Pablo & Tulare R. Co.*, 149 U. S. 308, 313–314 (1893); *South Spring Gold Co.* v. *Amador Gold Co.*, 145 U. S. 300, 301–302 (1892). Cf. *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 240–242 (1937) (Hughes, C. J.); *Fairchild* v. *Hughes*, 258 U. S. 126, 129–130 (1922) (Brandeis, J.).

Second, this is a peculiar case in which to depart from the settled rule. The effect of the decision today is to strip the payee of its asserted right to contribution, although the payee is not before this Court, and was not before the Court of Appeals or the District Court. The question of the relative rights and obligations of the payee and the bank ought to be resolved in litigation in which both participate.[2] Cf. *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (1950). The impact of today's decision upon a party not present confirms the wisdom of the rule "that when there is no actual controversy, involving real and substantial rights, between

---

of the United States § 274 (Wolfson & Kurland ed.); 6 Moore, Federal Practice ¶ 54.70 [5], at 1311 (2d ed. 1965).

[2] Upon vacation of the judgment below, the bank would be free to relitigate with the payee the question of its own liability, since the bank was in no respect responsible for the manner in which this case became a nonadversary proceeding. See *United States* v. *Munsingwear*, 340 U. S. 36, 39–40 & n. 1 (1950).

the parties to the record, the case will be dismissed." *Little* v. *Bowers*, 134 U. S. 547, 557. See also *Lord* v. *Veazie*, 8 How. 251, 255.

I would vacate the judgment below and remand with direction to dismiss. See *Mechling Barge Lines* v. *United States*, 368 U. S. 324, 329–330 (1961); *United States* v. *Munsingwear*, 340 U. S. 36, 39–41 (1950).