In the Matter of PATTON MANUFAC-
TURING COMPANY, Debtor.

The FIRST NATIONAL BANK OF CIN-
CINNATI, Caribbean Container Compa-
ny, the Chatfield Paper Corporation,
Chemineer, Inc., Joseph G. Donohoo, the
Mead Corporation, Smith & Schnacke,
and Touche, Ross, Bailey & Smart,
Plaintiffs-Appellants,

v.

Everett W. KIMBERLING, Trustee in
Bankruptcy for Patton Manufacturing
Company, Bankrupt, Defendant-Appel-
lee.

PATTON MANUFACTURING COMPA-
NY, G. L. P., Inc., Patton Manufactur-
ing Company, Inc., and Juno, Inc. (the
corporate name now changed to One
Um, Inc.), Plaintiffs-Appellants,

v.

Everett W. KIMBERLING, Trustee in
Bankruptcy for Patton Manufacturing
Company, Bankrupt, Defendant-Appel-
lee.

Nos. 18425, 18426.

United States Court of Appeals
Sixth Circuit.

July 1, 1969.

Ford Ekey, Dayton, Ohio (Ford W.
Ekey, Smith & Schnacke, Dayton, Ohio,
on the brief), for appellants, First Na-
tional Bank and others.

Gary L. Blum, New York City (Carl Morgenstern, Hamilton, Ohio, Sydney B. Levy, Levy, Levy & Ruback, New York City, on the brief), for appellants, Patton Mfg. Co. and others.

Paul D. Malina, Springfield, Ohio (Jack F. Pickrel, Pickrel, Schaeffer & Ebeling, Dayton, Ohio, Thomas E. Hackett, Hackett & Malina, Springfield, Ohio, on the brief), for appellee.

Before PHILLIPS, EDWARDS and COMBS, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from an order dated March 8, 1966, entered by a Referee in Bankruptcy and affirmed by a United States District Judge on March 28, 1967. The order complained of found that a plan of arrangement originally proposed by the debtor, Patton Manufacturing Company, had not been fully carried out. It adjudicated the debtor corporation to be bankrupt and ordered further proceedings to protect creditors under the terms of the Bankruptcy Act, 11 U.S.C. §§ 1 et seq. (1964), as amended, (Supp. IV 1965–1968).

The circumstances under which this arrangement was originally confirmed, with retention of jurisdiction, are critical to our ultimate decision and must be spelled out in some detail.

Patton Manufacturing Company filed a petition, dated March 3, 1964, for court approval of an arrangement of its unsecured debts under Chapter XI of the Bankruptcy Act. Subsequently, an amended plan was filed. Neither the original petition, nor the plan, nor the amended plan provided for retention of jurisdiction over the arrangement by the Bankruptcy Court.

When, however, an order was entered confirming the amended plan, the order did provide for the court retaining jurisdiction.

Subsequently, Patton Manufacturing Company filed a petition for modification of the amended plan. This petition recited that the court had retained jurisdiction over the plan. But the modified amended plan itself did not so provide. When the Referee entered an order confirming the modified plan, this order contained a provision retaining jurisdiction.

At the time of the arrangement proceedings, the only secured creditor was the First National Bank of Cincinnati, which had a mortgage on the real estate owned by Patton Manufacturing. Under the modified amended plan two companies, G. L. P., Inc. and Juno, Inc., were to be organized. All of Patton's property, real and personal, was to be transferred to Juno, Inc. The unsecured creditors of Patton Manufacturing were to receive promissory notes from G. L. P., Inc., equaling 25% of their respective claims. G. L. P. in turn was to hold all the Juno stock as trustee for the creditors. G. L. P. was to proceed to sell the Juno stock and apply the proceeds to payment of the notes. The notes were not paid.

Some of the note holders thereupon filed a petition before the Bankruptcy Court for adjudication of Patton as a bankrupt because of default on the arrangement.

In November of 1965 the First National Bank of Cincinnati instituted foreclosure action, took possession of the Patton real estate and personal property, and sold some of the personalty. On March 8, 1966, the Referee in Bankruptcy adjudged Patton Manufacturing to be a bankrupt and enjoined the bank's foreclosure proceedings.

Appellants contend that the March 8 order of the Referee is void. They argued before the District Judge and now argue before us that Congress intended the Chapter XI arrangement agreed upon by the parties themselves to be controlling as to whether or not there was continuing jurisdiction. They contend that if the arrangement did not so provide, Congress has given the Referee no power to extend his jurisdiction over the arrangement on the Referee's own motion.

The District Judge denied the petitions for review on the following reasoning:

"This Court cannot agree with the foregoing argument for several reasons:

"1. The Court of Appeals for the Sixth Circuit has stated, in In re Ohio Builders and Milling, Inc., 128 F.2d 165, 166 (1942):

" 'These actions [§ 357 of Chapter XI, 11 U.S.C. § 757 and § 368 of Chapter XI, 11 U.S.C. § 768] make it clear that the statute contemplates that retention of jurisdiction, whether general or limited may be stated *either in the plan or in the order confirming the plan.*' [Emphasis Added].

"This Court is aware of the criticism of the foregoing language in 9 *Collier on Bankruptcy*, 14th Ed.; however this Court is bound by the teachings of the Sixth Circuit.

"2. It is clear that a Referee may refuse to sign an order of confirmation if it does not contain a provision for retention of jurisdiction. Since all parties were advised by the order of the Referee dated March 8 [1] that he intended to retain jurisdiction, the failure of the parties to make known their objections thereto amounted, in effect, to their implicit agreement to include such a provision as a part of the arrangement. It is now too late to raise such an objection."

Appellants claim, however, that the *Ohio Builders* language relied upon by the District Judge was dictum, that it does not control our decision, and that we should follow the intent of Congress as they describe it.

We believe that it is conceded that the Congressional intent referred to cannot be found in the language of the statute itself. See 11 U.S.C. §§ 722, 723, 724 (1964).

11 U.S.C. § 757 provides:

"§ 757. *Permissive provisions*

"An arrangement within the meaning of this chapter may include—

\*    \*    \*    \*    \*    \*

"(7) provisions for retention of jurisdiction by the court until provisions of the arrangement, after its confirmation, have been performed; and

\*    \*    \*."

11 U.S.C. § 768 provides:

"§ 768. *Retention of jurisdiction; provision in arrangement*

"The court shall retain jurisdiction, if so provided in the arrangement."

Thus the statute clearly mandates the retention of jurisdiction by the Referee "if so provided in the arrangement." But it is silent as to what power, if any, the Referee has as to continuing jurisdiction if the plan of arrangement does not so provide.

Appellants would have us find the answer to this ambiguity in a House Committee Report. They argue:

"The intention of Congress is clearly expressed. 9 *Collier on Bankruptcy* (14 Edit.) p. 368, footnote 4, quotes the House Committee report analyzing H.R. 12889, 74th Cong., 2d Sess. (1936) as follows:

" 'The general concept of the retention of jurisdiction is derived from Section 74(j), where, however, it is limited to the case of an extension. We expand this provision to apply to compositions as well as to extensions; *but we restrict it to cases where the arrangement itself contains a provision for the retention of jurisdiction. It is our thought that the creditors should have a voice in the matter, and that if they accept an arrangement which makes no provision for such retention their wishes should bind the court.* However, we make it mandatory to retain jurisdiction where it is necessary to do so in order to dispose of claims which cannot be allowed or

---

1. It appears from the record that the Court intended to refer to May 13, 1964—the

arrangement and retained jurisdiction. date when the Referee first confirmed the

disallowed before confirmation.' " (Emphasis in original.)

We shall deal first with the question as to whether the quoted language from In re Ohio Builders & Milling, Inc., 128 F.2d 165 (6th Cir. 1942), decides the statutory interpretation issue posed in this case. In *Ohio Builders* this court dealt with a fact situation which was nearly the reverse of this one. There the plan of arrangement had provided for continuing jurisdiction, but the express terms of the order entered apparently did not. We believe the language quoted in the District Judge's opinion was intended to be limited to the fact situation of that case, and that it should not be held to control our present problem.

The District Judge's second stated reason for dismissing the petition *for review* encompassed two elements:[2]

1) a construction of the statute, and

2) a finding of fact concerning this particular case.

As to the interpretation of the statute, the District Judge said: "It is clear that a Referee may refuse to sign an order of confirmation if it does not contain a provision for retention of jurisdiction."

It appears that the statutory reason for having the "arrangement" approved is that only by doing so can some dissident creditors be required to accept the scheme desired by the majority. But this means the voluntary character of the arrangement is more ephemeral than real. As we will see, it is the Referee's approval of the fairness and practicality of the arrangement which underlies the requirement that the dissident creditors accept and be bound by it. Under these circumstances, if the Referee has doubts about the arrangement, he should have the authority to refuse approval absent a provision for continuing jurisdiction to supervise it. And, indeed, the statute

specifically grants him power to refuse to confirm the arrangement unless he finds the plan is in the best interest of the creditors and is feasible. 11 U.S.C. § 621 (1964).

Further, for certain purposes (not involved here) Congress has seen fit to continue the jurisdiction of the Referee in spite of the fact that neither the plan nor the order entered provided for such jurisdiction. 11 U.S.C. §§ 11a(21), 767 (2) & (3), 769, 770, 772 and 786 (1964). *See* 9 Collier on Bankruptcy ¶ 9.28 (14th ed. 1968).

We agree with the District Judge in relation to the statutory interpretation we have quoted. If Congress had intended to deny the Referee any power at all in relation to continuing jurisdiction, it could easily have limited the wide statutory discretion given him in 11 U.S.C. § 621. And equally easily Congress could have added the word "only" to the fundamental section we construe (11 U.S.C. § 768) so as to make it read: "The court shall retain jurisdiction *only* if so provided in the arrangement."

■■■ When we compare the statutory language of 11 U.S.C. § 621 and § 768 and *then* consider the effect of the House Committee Report, we conclude that the best way to deal with the statutory ambiguity pertaining to retention of jurisdiction is to hold as follows:

1) If the plan of arrangement *does* provide for continuing jurisdiction of the court and the Referee finds the plan feasible, in the best interests of the creditors and proposed in good faith, he must approve the plan *with* retention of jurisdiction. If the plan of arrangement *does not* provide for continuing jurisdiction and the Referee finds the plan feasible, in the best interest of the creditors, and proposed in good faith, he must approve the plan *without* retention of jurisdiction.

---

2. Appellants also contend that the District Judge relied upon the doctrine of estoppel. Although this reliance is not clear, we note our agreement that the question of jurisdiction of the court can be raised at this (or any) time. American Fire & Casualty v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); People's Bank of Belville v. Calhoun, 102 U.S. 256, 26 L.Ed. 101 (1880).

■ In this regard, of course, we merely recite the unambiguous commands of 11 U.S.C. § 768 and § 621 and the stated position of such authority as has considered this problem. Goggin v. Bank of America Nat. Trust & Savings Ass'n, 186 F.2d 158 (9th Cir.), cert. denied, 341 U.S. 931, 71 S.Ct. 804, 95 L.Ed. 1360 (1951); In re Gordon, 44 F. Supp. 581 (S.D.N.Y.), aff'd sub nom., Gordon v. Kleckner, 131 F.2d 863 (2d Cir. 1942); In re Independent Macaroni Co., 46 F.Supp. 813 (S.D.N.Y.1942). *See also* 9 Collier on Bankruptcy ¶¶ 8.12, 9.29 (14th ed. 1968).

2) If the Referee, however, is asked to confirm a plan of arrangement which does not provide for retention of jurisdiction and he finds that the plan is not "in the best interest of the creditors" or is not "feasible," under 11 U.S.C. § 621 he clearly can and should deny confirmation.

In denying confirmation of the plan of arrangement if the Referee feels that continued jurisdiction would increase the security of the creditors or the feasibility of the plan so as to meet statutory conditions, we know of no reason why he cannot say so. The petitioners for the arrangement would then be faced with the choice of a purely voluntary arrangement with no court order at all or of proposing a plan of arrangement providing for retention of jurisdiction.

This interpretation seems to us to represent the best possible reconciliation of 11 U.S.C. § 768 and § 621 of the statute and to accord as well as may be with the stated intent in the House Committee Report that, "The creditors should have a voice in the matter."

However appropriate the steps outlined above may be, it is certain that merely reciting them does not decide our instant case. The Referee, as we have noted, followed a distinctly abbreviated version of the procedure outlined above and the question remains as to whether his failure to require petitioners formally to make the choice referred to above deprived him of statutory authority to enter the order retaining jurisdiction. We believe under the facts of this case it did not.

Jurisdiction is a fundamental concept, but it is by no means a simple one and the term is used in many different ways. In our instant case, for example, it is clear that the Referee had jurisdiction over the parties and over the subject matter. What is really in dispute is his right to enter the order which he entered under the facts of this case and under the complex and ambiguous statutory provisions which detail his powers.

In a quite different bankruptcy case, the United States Supreme Court said:

"[W]e do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction. Section 2a, 52 Stat. 842, 11 U.S.C. § 11(a); Pepper v. Litton, 308 U.S. 295, 304–305 [60 S.Ct. 238, 244–245, 84 L.Ed. 281]; Securities & Exchange Commission v. U. S. Realty & Imp. Co., 310 U.S. 434, 455 [60 S.Ct. 1044, 1053, 84 L.Ed. 1293]." Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).

■ In our instant case the Referee and the District Judge relied upon the up to now accepted interpretation of the dictum in the *Ohio Builders* case. Under it the Referee was clearly seeking to follow the complexities of the Bankruptcy Act as he thought they had been construed by this court. In doing so he had the authority of a similar (albeit critical) interpretation of that case by one of the leading bankruptcy authorities. 9 Collier on Bankruptcy ¶ 8.12 n. 3 (14th ed. 1968). And, of course, other Referees may well have acted under the same impression since *Ohio Builders* in 1942.

Further, no effort was ever made by petitioners or creditors in this case to register objection to the Referee's order of May 13, 1964, retaining jurisdiction, or to appeal it. And, as we have noted, the petition upon which the modified

amended plan was based contained reference to retention of jurisdiction. On these facts the District Judge found an "implicit agreement to include such a provision [for continuing jurisdiction] as a part of the arrangement."

We believe that at least by the time of the application for the modified amended plan of arrangement the Referee (and the District Judge) had before them facts which warranted their concluding that continuing jurisdiction over the plan until its terms had been completed had the approval of both debtor and creditors.

We find no reversible error and the judgment of the District Court is affirmed.