**In the Matter of Rosie Mae HILL.**

**PRUDENTIAL CREDIT SERVICES, Appellant,**

v.

**Rosie Mae HILL, Appellee.**

**Bankruptcy No. 8001040JC.**

United States Bankruptcy Court, S. D. Mississippi, Jackson Division.

Jan. 14, 1981.

Kenneth G. Stamps, Jackson, Miss., for appellant.

Pat A. Catchings, Jackson, Miss., for appellee.

## OPINION

BARNEY E. EATON, III, Bankruptcy Judge.

On May 15, 1980, Rosie Mae Hill (Debtor) filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code. As a result, the automatic stay provisions of Bankruptcy Code § 362 (11 U.S.C. § 362) became applicable. On June 30, 1980, Prudential Credit Services (Prudential) commenced this proceeding by filing an "Application for Abandonment," seeking this Court to enter an order requiring the Trustee to abandon the Debtor's homestead from the Debtor's estate in order to allow Prudential to pursue foreclosure proceedings. On July 22, 1980, the Debtor filed an "Answer to the Application for Abandonment" contending that she received no consideration for the loan, that she did not intend to give a second deed of trust on her home and requested that the Court prevent the trustee from abandoning the property. A hearing on the matter was held before this Court on October 6, 1980.

### I.

The pertinent facts as established by the pleadings, testimony, and other evidence offered at the hearing are as follows:

The Debtor's petition for relief filed May 15, 1980, listed on Schedule A–3, Prudential Credit Services as an unsecured creditor, with Walter Tate, Debtor's son, listed as co-signer.

The loan in controversy was made in order to allow Tate and another man to purchase a taxi cab.

The check for the loan in question was made payable to Tate.

The Debtor testified that Prudential failed to explain to her the terms of the contract or her obligations thereunder. The testimony showed that the debtor was under the assumption that she was signing only as a guarantor of the loan. In addition, the Debtor's testimony convinced the Court that she did not intend to give a second deed of trust on her home at the time she signed the deed of trust. The testimony indicated that the property description on the deed of trust was blank when signed by the Debtor, with the identification of the property being filled in later. Therefore, because the property description was blank at the time of the signing, the debtor assumed that her property was not collateral for the loan. The Debtor's testimony was consistent throughout the trial despite strenuous effort to discredit her on cross-examination.

## II.

■ This Court has had broad experience in dealing with the problems of consumer debtors and small loan companies. Rarely is there a debtor who has not borrowed money from one or more small loan companies, producing a variety of serious problems both for the debtor and the creditor. Frequently, creditors lending money to a consumer debtor take a security interest in the debtor's homestead. In many cases, the debtor is unaware of the consequences of the forms he signs. The creditors are expert in this area which provides to them substantial advantage over the debtor. Often, the debtor is neither knowledgeable nor familiar with such financial and legal matters. It has been the Court's experience that the small loan companies do not explain sufficiently to the debtor the consequences or significance of his signing. Usually, the loan company places before the debtor a number of forms, which the debtor signs without complete comprehension of the documents he is signing or the consequences thereunder. This Court recognizes that small loan companies serve an important economic place in society by making high risk loans to needy people who would be turned down by commercial banks. This risk, however, is compensated by state laws which permit them to assess the borrower with enormously high interest rates and other charges. Accordingly, the loan company should not be allowed to take advantage of these needy and often unknowledgeable people. The loan company should clearly and conspicuously show the debtor that his residence has been put up as collateral for the loan and that if he fails to pay back the loan, he may lose his house.

■ In this case, the Debtor is a lady with what appears to be little formal education. She went with her son to the loan company in order to help him obtain a loan. The Debtor testified that she was told that her son would pay back the loan and that she was signing merely because she had good credit. The check for the loan was made payable to the Debtor's son, Walter Tate, who used the check to purchase a taxi cab.

It is a well established rule that equitable principles govern the exercise of bankruptcy jurisdiction. 28 U.S.C. § 1481; *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Securities & Exchange Commission v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

"A court of bankruptcy is a court of equity, exercising equitable powers of broad sweep. And, within the statutory scheme, the court may exert such powers in full vigor with respect to the allowance, rejection or subordination of claims. It is empowered to sift the circumstances surrounding any claim to see that injustice and unfairness is not done in the administration of the bankrupt estate." *Rader v. Boyd*, 252 F.2d 585, 586 (10th Cir. 1957).

Accordingly, this Court feels obligated to remedy problems which develop from a debtor's ignorance of the nature of their credit obligations, especially where the creditor has been a contributing factor. In this case, it is clear that it would be inequitable to hold the debtor liable where the deed of trust was not completed and where the loan company failed to adequately explain the content and the meaning of the deed of trust to the debtor.

The Debtor's son, Walter Tate, was the party that received the consideration for the loan. To permit the loan company under these circumstances, to obtain recovery only from the party that benefited from the transaction is to do equity.

This opinion is in accordance with the Order entered in this cause on October 7, 1980.