**In re Cledus J. YOUNG, Debtor.**

**No. 8:10–bk–19731–MGW.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 28, 2010.

Christopher A. Ewbank, Esquire, Allan C. Ewbank, PA, Tampa, FL, for Debtor.

Keith T. Appleby, Esquire, Fowler White Boggs PA, Tampa, FL, for Bank.

***ORDER AND MEMORANDUM OPIN-
ION DENYING DEBTOR'S MO-
TION FOR SANCTIONS FOR VIO-
LATIONS OF THE AUTOMATIC
STAY***

MICHAEL G. WILLIAMSON,
Bankruptcy Judge.

On the date of the petition, the Debtor maintained checking and savings accounts ("Accounts") with Wells Fargo Bank, N.A. ("Bank"). The Debtor claimed the Accounts as exempt in his Schedule C filed with the petition. Immediately upon learning of the Debtor's bankruptcy filing, the Bank placed an administrative freeze on the Accounts pending directions from

the chapter 7 trustee as to the proper disposition of the Accounts.

In response, the Debtor has filed a motion seeking sanctions against the Bank for violation of the automatic stay and an order directing the Bank to immediately release the Accounts to the Debtor ("Motion").[1] For the reasons set forth below, the Court concludes that the Accounts were property of the estate on the date of filing, the administrative freeze placed by the Bank on the Accounts did not violate the automatic stay, and the Debtor does not have standing to seek sanctions for violation of the stay as to the Accounts. Accordingly, the Motion will be denied.

## I. Findings of Fact

The Debtor, Cledus J. Young ("Debtor"), filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 17, 2010 (the "Petition Date"). As of the Petition Date, the Debtor's Accounts consisted of two checking accounts and a savings account at the Bank with the respective balances of $100.09, $5,609.47, and $49.54. The Bank is not a creditor of the Debtor and has no right of setoff. The Debtor listed the Accounts as exempt property under 11 U.S.C. § 522(d)(5) on his Schedule C.[2]

Pursuant to its nationwide policy, the Bank receives notices of customer bankruptcy filings via the federal courts' CM/ECF system. As a matter of course, the Bank places the bank account of any customer that has filed for bankruptcy in "bankruptcy status." Under the Bank policy, once an account is placed in "bankruptcy status," the funds are no longer available to the debtor. This policy of freezing debtor bank accounts applies to

---

1. Motion Seeking Sanctions and Relief for Violations of the Automatic Stay (Doc. No. 7).

2. Section 522(d)(5) is not ordinarily available to Florida residents. The Debtor claimed this exemption as a former Texas resident, and the Court makes no ruling on this issue at this time.

bank accounts of non-borrower customers that hold in excess of $5,000.00 at the time the Bank receives notice of the bankruptcy filing. Once an account is placed in bankruptcy status, the funds are only payable to or on the order of the bankruptcy trustee.

On August 19, 2010, the Bank received notice of the Debtor's bankruptcy filing and immediately designated the Accounts in its system as "in bankruptcy status" and no longer available to the Debtor. On the same day, the Bank notified the Trustee and the Debtor by facsimile and U.S. mail that the Accounts were property of the estate and that the Bank had placed the Accounts in "bankruptcy status" pending direction from the trustee appointed in this case ("Trustee"). The letter to the Trustee stated, in part:

> [The Bank] received notification of [the Debtor's] bankruptcy petition. Sections 541 and 542 of the Bankruptcy Code require [the Bank] to act in good faith to preserve the Estate Funds and to follow your direction with regard to property of the estate. When [the Bank] received notice, [the Bank] checked the value of the debtor's account(s) on the filing date and the notice date, less identifiable Social Security payments. The low balance in the account(s) on or between those dates, $5,759.10, became property of the bankruptcy estate, known as the "Estate Funds." The Estate Funds are now in bankruptcy status, which means they are payable only to or upon your order.

> The Estate Funds will remain in bankruptcy status until [the Bank] receives direction from [the Trustee] regarding their disposition or on October 22, 2010, which is 31 days after the scheduled First Meeting of Creditors. If [the Trustee] wishes [the Bank] to take any other action with the Estate

Funds, please complete and sign the enclosed form, and fax it back to [the Bank].

Attached to the Bank's letter to the Trustee was a form listing four options for the Trustee. The form stated, in part:

Request for Trustee Instructions—Bankruptcy
Case 10–19731

[The Trustee] hereby directs [the Bank] to take the following action with regard to Estate Funds:

| | |
|---|---|
| [ ] Release all funds held in account(s) to account holder(s) | $_____ |
| [ ] Release partial amount in account to account holder(s) | $_____ |
| [ ] Turnover Estate Funds to the Bankruptcy Estate | $_____ |
| [ ] Continue to hold funds without action until | Date:_____ |
| [ ] Other, please give specific instructions: | _____ |

Signed: _____
Chapter 7 Trustee

The Bank's letter to Debtor's counsel, stated in part:

> [The Bank] received notification of [the Debtor's] bankruptcy filing. When [the Bank] received notice, [the Bank] checked the value of [the Debtor's] account(s), on the filing date and the notice date, less identifiable Social Security payments. The low balance in the account(s), on or between those dates, $5,759.10, became property of the bankruptcy estate, known as "Estate Funds." The Estate Funds are now in bankruptcy status, which means they are no longer available to [the Debtor].

> [The Bank] is required by operation of Sections 541 and 542 of the Bankruptcy Code to act in good faith to preserve the Estate Funds and must follow the [Trustee's] direction with regard to the Estate Funds. Accordingly, [the Bank] has asked for instructions from the [Trustee]. As you know, the [Trustee] has 30 days from the First Meeting of Creditors to object to a claim of exemption for the Estate Funds. Ownership of claimed exempt property remains with the bankruptcy estate until such time passes or the trustee directs otherwise.

[The Bank] is prepared to immediately follow the trustee's direction regarding the Estate Funds and you may be able to expedite the trustee's decision. [The Bank] sent a similar request for instructions to the [Trustee].

On August 20, 2010, the Debtor filed his Motion alleging that the Bank violated 11 U.S.C. § 362(a)(3) by "exercise[ing] control over property of the estate" and requested sanctions for actual damages, punitive damages, and attorney's fees pursuant to 11 U.S.C. §§ 105 and 362(k). In addition, the Motion seeks an order directing immediate release of the administrative freeze of the Accounts on the basis that the administrative freeze impairs the Debtor's fresh start and his ability to pay living expenses.

Pursuant to instructions from the Trustee, on or about August 23, 2010, the Bank removed the administrative freeze on two of the Accounts. On August 25, 2010, the Trustee filed her Response[3] and stated: (i) that she was unable to determine the exempt status of the Accounts and (ii) that she had requested, but not received, sufficient information from the Debtor to substantiate the source of the Accounts' funds.

## II. Conclusions of Law

A. The Accounts Were Property of the Estate on the Date of the Petition.

■ Resolution of the Motion involves application of several basic Bankruptcy Code provisions. The first of these is section 541, which defines property of the estate.[4] Under this provision, it is clear that because the Accounts were property in which the Debtor had a legal or equitable interest as of the commencement of the case, that they were property of the estate.[5] As a result, both the Debtor and the Bank had separate and independent statutory duties owing to the Trustee as the representative of the estate[6] with respect to the Accounts.

■ The obligation of the Debtor was to surrender to the Trustee his interest in the Accounts. This obligation arises under Bankruptcy Code section 521 ("Debtors duties"), which sets forth the numerous duties placed upon a debtor seeking relief under the Bankruptcy Code. Included among these duties is the duty to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, papers, relating to property of the estate...."[7]

■ The Bank's obligation with respect to the Accounts arose under the turnover provision contained in Bankruptcy Code section 542.[8] This provision provides that "an entity that owes a debt [to a debtor] ... payable on order, *shall* pay such debt to, or on the order of, the trustee...."[9] Accordingly, in this case, because the Account represented a promise by the Bank to pay the amount of the Accounts to the Debtor, the Bank was under the obligation to pay the amount of the Account as ordered by the Trustee.[10]

---

3. Trustee's Response to Debtor's Motion Seeking Sanctions and Relief for Violations of the Automatic Stay Against Wachovia Bank aka Wells Fargo Bank, N.A. (Doc. No. 13).

4. 11 U.S.C. § 541.

5. 11 U.S.C. § 541(a)(1).

6. 11 U.S.C. § 323.

7. 11 U.S.C. § 521(a)(4).

8. 11 U.S.C. § 542.

9. 11 U.S.C. § 542(b) (emphasis supplied).

10. 11 U.S.C. § 542(b). *See Citizens Bank of Maryland v. Strumpf (In re Strumpf)*, 516 U.S. 16, 20, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995)(a bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor").

The Court concludes that Congress's use of the word "shall" in the turnover provision makes the turnover obligation mandatory and exposes the person owing the debt to the debtor to liability for failure to comply unless that person's failure falls within the scope of the immunity from liability granted by Bankruptcy Code section 542(c).[11]

■ Bankruptcy Code section 542(c) immunizes persons that engage in certain post-petition transfers of property of the estate with neither actual knowledge nor notice of the filing of the bankruptcy.[12] Under section 542(c), if a person has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor, the person may pay the debt in good faith to a person other than the trustee "which can also be the debtor."[13] Note that this immunity would not extend to the recipient of the check. That is, Bankruptcy Code section 549 would still be available to pursue even innocent transferees of unauthorized transfers of estate property.[14]

■ Thus, a bank, without notice of a bankruptcy case, may honor checks drawn by the debtor on an account that is property of the bankruptcy estate. It appears that section 542(c) codifies the holding of *Bank of Marin v. England*[15] involving a bank that honored checks drawn by a debtor on a pre-petition bank account.

The Supreme Court held that the bank's good faith and lack of notice of the filing of the petition created an immunity from liability based on equitable principles.[16]

As a result, because of the possibility that a bank without knowledge of the bankruptcy filing may honor checks drawn on a pre-petition bank account, the Bankruptcy Rules require a trustee to negate section 542(c)'s protective provisions by giving notice of the case as soon as possible to every person without knowledge or notice who is known to be holding non-exempt money that is property of the estate.[17] There is no issue in this case of the Bank having actual notice of the filing of the bankruptcy case because of the Bank's cautious internal policy of reviewing bankruptcy filings through the federal courts' CM/ECF system on a daily basis.

■ It is also clear that while the Debtor claims the Accounts as exempt property in his Schedule C, a debtor's mere claim of exemption for property does not cause it to cease being property of the estate until the exemption is allowed or until the time for objecting to the exemption under Bankruptcy Rule 4003 has expired.[18] Accordingly, there is no question but that the Accounts were property of the Debtor's bankruptcy estate at all times material to the Motion.

---

**11.** *See* 4 *Norton Bankruptcy Law and Practice* § 69:3 at 69–8 (3rd ed. 2008).

**12.** *Id.*

**13.** *Id.* (citing *Bank of Marin*, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197).

**14.** *Id. See also In re Delco Oil, Inc.*, 599 F.3d 1255, 1262 (11th Cir.2010)(holding that "a 'harmless' exception to a trustee's Section 549(a) avoiding powers does not exist" except in cases involving involuntary petitions and good faith purchasers of real property).

**15.** 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966).

**16.** *Id.*; 4 *Norton Bankruptcy Law and Practice* § 69:3 at 69–8, n. 4 (3rd ed. 2008).

**17.** Fed. R. Bankr.P. 2015(a)(4).

**18.** *See, e.g., In re Jimenez*, 406 B.R. 935, 942 (citing *In re McLain*, 516 F.3d 301, 315 (5th Cir.2008); *In re Villegas*, 364 B.R. 781, 785 (Bankr.D.N.M.2007)).

B. The Bank did not Violate the Automatic Stay by Freezing the Account Pending Instructions from the Trustee with Respect to the Account.

On the same day that the Bank received notice of the Debtor's bankruptcy filing, the Bank notified both the Trustee and the Debtor by facsimile and U.S. mail that the Accounts were property of the estate and that the Bank had placed the Accounts on "bankruptcy status" pending directions from the Trustee. The Debtor contends that this action by the Bank violated the automatic stay because it was an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." [19]

■ As discussed by the United States Supreme Court in *Strumpf,* [20] the Debtor's reliance on section 362(a)(3) rests on the "false premise that the [Bank's] administrative hold took something from [the Debtor], or exercised dominion over property that belonged to [the Debtor.]" [21] Such might be the case if a bank deposit actually represented money physically held by a bank on behalf of a customer. To the contrary, a bank deposit "consists of nothing more or less than a promise to pay, from a bank to the depositor." [22]

As in *Strumpf,* in this case the Bank's hold on the Debtor's account pending instructions from the Trustee was neither a taking of possession nor an exercise of control over property of the Debtor's bankruptcy estate. [23] It was merely a refusal to perform its promise to pay to the Debtor who had absolutely no authority to direct disposition of estate property after the case was filed. Thus, this refusal could in no way give rise to a violation of section 362(a)(3). [24] Rather, the Bank's actions were factually analogous to the actions of the bank in *Strumpf.* [25] That is, the Bank placed an administrative freeze on the Accounts while awaiting a decision from the Trustee—the party with authority to direct disposition of estate funds. This is similar to the situation in *Strumpf* where the bank placed an administrative freeze on an account awaiting the court's decision on its motion to lift the automatic stay so that it could exercise its right of setoff. [26]

C. The Debtor does not have Standing to seek Sanctions against the Bank.

■ The Trustee is the representative of the estate in a chapter 7 case. [27] As such, the Trustee is the only person with standing to collect and administer property of the estate for the benefit of creditors. [28] As discussed above, upon the filing of the petition, the Accounts became property of the bankruptcy estate. It is the Trustee to whom the obligation to turn over such property runs. [29] And it is the Trustee that has the right to use property of the estate under Bankruptcy Code section 363.

19.   11 U.S.C. § 362(a)(3).

20.   *Citizens Bank of Maryland v. Strumpf (In re Strumpf),* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

21.   *Strumpf,* 516 U.S. at 20, 116 S.Ct. at 289.

22.   *Id.*

23.   *Id.*

24.   *Id.*

25.   *In re Calvin,* 329 B.R. 589, 603 (Bankr. S.D.Tex.2005).

26.   *Id. See also In re Jimenez,* 406 B.R. 935 (Bankr.D.N.M.2008).

27.   11 U.S.C. § 323.

28.   *See generally* 11 U.S.C. § 704(a) ("Duties of trustee").

29.   11 U.S.C. § 542.

A chapter 7 debtor has none of these rights. To the contrary, in this case, the Debtor's obligation was to "surrender to the trustee all property of the estate...."[30]

The underlying basis of the Debtor's Motion is entirely inconsistent with this statutory framework. That is, the Debtor contends that he has the right to obtain sanctions against the Bank for refusing to comply with the Debtor's instructions with respect to the Accounts. Those instructions have as their objective unauthorized transfers to the Debtor and other parties in violation of the Bank's turnover obligations under section 542 and in violation of the Debtor's obligation to surrender property of the estate to the Trustee.

In reaching this conclusion, the Court rejects the reasoning of *In re Mwangi*[31] in which the court held that the debtor derived standing from an "inchoate interest" in property claimed as exempt solely based on the claim of exemption and prior to any allowance of exemption. To the contrary, the Debtor in this case can establish no "injury in fact" resulting from the Bank's decision to seek direction from the Trustee as to the appropriate disposition of the Accounts.[32]

In fact, the status of the Accounts as exempt property had not been resolved as of the time of the hearing on the Motion,[33] and the Trustee was seeking further information from the Debtor to substantiate the source of the Accounts' funds. Indeed, if a debtor were deemed to have standing to seek sanctions in situations such as this one, the result would be that a bank, to avoid such sanctions, would honor a debtor's request with the result that in cases in which the exemption were subsequently disallowed, the estate would be deprived of assets to pay creditors.

This Court has seen innumerable instances where the existence of substantial funds in a debtor's bank account, often undisclosed in the schedules, was discovered by the trustee at the meeting of creditors after all such funds had been dissipated. Invariably, the debtor has no money at that time to turn over to the trustee. In such instances, the remedies available to a trustee are few and inadequate. One such remedy may be to deny the debtor's discharge. Another may be to enter a judgment against the debtor in favor of the trustee for the amount of the funds taken by the debtor. Or the trustee can consider bringing actions against the other and often innocent recipients of the transfers. None of these alternatives is either conducive to the debtor's "fresh start" or an efficient way to administer property of the estate. Clearly, the procedure followed by the Bank in this case is a preferred alternative and allows the property of the estate to be properly established and administered efficiently and consistent with the various provisions of the Bankruptcy Code referenced above.

For the guidance of parties, the holding in this case is limited to chapter 7 cases. In fact, it is the Court's preliminary view that a bank's freezing of a chapter 11 or chapter 13 debtor's bank account, solely based on the filing of a petition under chapter 11 or 13, may well be a violation of the automatic stay for which a bank may be subject to sanctions and be

---

**30.** 11 U.S.C. § 521(a)(4).

**31.** 432 B.R. 812, 821 (9th Cir. BAP 2010).

**32.** *In re Jimenez*, 406 B.R. at 941 (citing *New England Health Care Employees Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008)).

**33.** The hearing on the Motion was conducted on August 26, 2010.

liable for any resulting damages. And a chapter 11 or chapter 13 debtor would have standing to seek such relief. The reason for this distinction is apparent when one considers the substantial differences between a chapter 7, which has as its purpose liquidation of property of the estate, and chapter 11 and 13 cases, which have as their purpose the debtor's continued possession and use of property of the estate pending confirmation of a plan.

■■■■■ For example, in chapter 11 cases, the Bankruptcy Code contemplates that debtors continue in possession of property of the estate.[34] Debtors in possession have all of the rights (with certain limited exceptions) of a trustee serving in a case under chapter 11.[35] In addition, unless the court orders otherwise, the debtor in possession may operate the debtor's business.[36] This includes the exercise of the trustee's rights to use property of the estate under Bankruptcy Code section 363. Particularly relevant to this case, the obligation of a party to turn over property of the estate under Bankruptcy Code section 542 inures to the benefit of the debtor in possession in a chapter 11 case.[37]

■■■■■ Chapter 13 cases also contemplate that debtors will retain control over their assets absent court order and pending confirmation of a plan. In this regard, in a chapter 13 case, the debtor has, exclusive of the trustee, most of the rights and powers of the trustee under Bankruptcy Code section 363, which governs use of property of the estate.[38] Further, a chapter 13 debtor engaged in business may operate the business without a court order,

subject only to any limitations on a trustee under sections 363 and 364.[39] A typical chapter 13 plan contemplates that the debtor retains all property of the estate subject to the requirement that the value of property to be distributed under the plan be not less than the amount that would be paid to creditors if the debtor's assets were liquidated under chapter 7.[40] Accordingly, chapter 13 debtors are entitled to access to property of the estate after the filing of their cases, to include funds in their bank accounts.

## III. Conclusion

In this case, the Debtor seeks sanctions against the Bank for the Bank's administrative freeze of the Debtor's Accounts pending receipt by the Bank of direction from the Trustee. It is the Court's conclusion that on the date of the petition, the Accounts were property of the bankruptcy estate subject to the direction and control of the Trustee. As such, they were subject to the turnover provisions that imposed an obligation on the Bank to pay the amount of the Accounts to or on the order of the Trustee. The action by the Bank in seeking direction from the Trustee was entirely consistent with this statutory framework and did not violate the automatic stay. Moreover, the Debtor, whose claim of exemptions for the Accounts had not yet been allowed, had no standing to bring the Motion seeking sanctions.

Accordingly, for the reasons set forth above, it is

---

**34.** 11 U.S.C. § 1101(1); 11 U.S.C. § 1107.

**35.** 11 U.S.C. § 1107(a).

**36.** 11 U.S.C. § 1108.

**37.** 11 U.S.C. § 1107(a); 11 U.S.C. § 542.

**38.** 11 U.S.C. § 1303.

**39.** 11 U.S.C. § 1304.

**40.** 11 U.S.C. § 1325(a)(4) (the "Best Interests Test").

**ORDERED** that the Debtor's Motion is DENIED.

**DONE** and **ORDERED.**