Todd FOX, Edward R. Detweiler, Stephanie Vaiano, James B. Cullen, Christine Marie Odell, Steven Gawley, Daniel Altman, Philip Jay Botwinik, Jeffrey S. Zellan, Jaclyn Bernstein, and American Future Systems, Inc., Plaintiffs,

v.

The BOARD OF TRUSTEES OF the STATE UNIVERSITY OF NEW YORK, and Clifton R. Wharton, Jr., Individually and as Chancellor of the Board of Trustees and the State University of New York College at Cortland, and James M. Clark, Individually and as President of the College at Cortland, and the State University of New York at Binghamton, and Clifford D. Clark, Individually and as President of the State University of New York at Binghamton, and the State University of New York at Albany, and Vincent O'Leary, Individually and as President of the State University of New York at Albany, and the State University of New York College of Arts and Sciences at Potsdam, and Humphrey Tomkin, Individually and as President of the College of Arts and Sciences at Potsdam, Defendants.

No. 82–CV–1363.

United States District Court, N.D. New York.

Oct. 3, 1988.

Ronald H. Sinzheimer, Albany, Duane Morris & Heckscher, Henry T. Heath, Wayne A. Mack, Jr., Philadelphia, Pa., for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N.Y., Lawrence Doolittle, Asst. Atty. Gen., Albany, N.Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### BACKGROUND

This is the third time this case has been before the court. Familiarity with the prior proceedings is presumed.[1] Nevertheless, a brief review of the background of the case is appropriate. American Future Systems, Inc. (AFS) sells cookware, china, crystal, and silverware to college students through group demonstrations. In 1982, one of AFS' representatives, Kathleen Rapp, was required by University officials to leave a dormitory room on the campus of the State University of New York (SUNY) at Cortland, even though she had been invited to give a demonstration by a student resident. Rapp's removal was due to the enforcement of SUNY Board of Trustees Resolution 66–156, as amended, which reads as follows:

No authorization will be given to private commercial enterprises to operate on State University campuses or in facilities furnished by the University other than to provide for food, legal beverages, campus bookstore, vending, linen supply, laundry, dry cleaning, banking, barber and beautician services and cultural events.

In order to challenge the SUNY Resolution and its enforcement at SUNY–Cortland, AFS, Rapp, and Todd Fox, a student who wished to host an AFS demonstration, commenced this suit on December 2, 1982. AFS and Rapp asserted that the SUNY Resolution and its enforcement deprived them of their first amendment right to free speech. Fox claimed that the Resolution and its enforcement deprived him of his rights of privacy and association as well as free speech. Claims under the due process, equal protection and search and seizure clauses of the constitution were also asserted as were pendent claims under the constitution and laws of New York State.

Plaintiffs moved for an injunction permitting them to conduct their demonstrations at SUNY–Cortland without interference *pendente lite.* In a decision dated June 3, 1983, this court enjoined the University from prohibiting demonstrations in the dormitory rooms of a consenting SUNY–Cortland student. *American Future Systems, Inc. v. State University of New York at Cortland,* 565 F.Supp. 754 (N.D.N.Y.1983). The court presumed irreparable harm in that plaintiffs had alleged deprivation of their first amendment freedoms. *Id.* at 761. The court then concluded that plaintiffs were likely to prevail on their claim that the SUNY regulation and its enforcement unconstitutionally infringed on their first amendment freedoms. *Id.* at 761–67. In so doing, the court characterized the speech in question as commercial speech, and applied the commercial speech test of *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980):

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted government interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than necessary to serve that interest.

*Id.* at 566, 100 S.Ct. at 2351.

Defendants did not contend that the group demonstrations were unlawful or deceptive, so the court found the first step of *Central Hudson* to be satisfied. *American Future Sys.,* 565 F.Supp. at 763–64. The court also found the defendants proffered interests of (1) preventing disruption;

---

**1.** See *American Future Systems, Inc. v. State University of New York at Cortland,* 565 F.Supp. 754 (N.D.N.Y.1983); *Fox v. Bd. of Trustees,* 649 F.Supp. 1393 (N.D.N.Y.1986), *rev'd,* 841 F.2d 1207 (2d Cir.1988).

(2) protecting the safety and security of the students; and (3) protecting students from commercial exploitation to be substantial. *Id.* at 764–65. The court determined, however, that the complete ban only directly advanced interest numbered (3); and, in any event was more extensive than necessary to serve that interest. *Id.* at 765–67.

Although the court determined that under *Central Hudson*, the plaintiffs were likely to succeed on their claims that SUNY had violated their first amendment freedom to disseminate and receive commercial information, it determined that the consummation of commercial transaction was not so protected. *Id.* at 767–68. Moreover, the court determined that while the defendants could not bar group demonstrations completely, they could enforce reasonable restrictions governing the time, place and manner of such demonstrations. *Id.* at 771. Accordingly, the court's Order enjoined defendants from enforcing Resolution 66–156 to the extent that it barred the plaintiffs from disseminating and receiving information in the course of group product demonstrations conducted in the dormitory room of an inviting student at SUNY–Cortland. It did not, however, enjoin defendants from prohibiting consummation of sales, nor from enforcing reasonable time place and manner restrictions.

In response, SUNY–Cortland promulgated regulations which prohibited the consummation of all sales on campus; restricted AFS presentations to certain hours; confined the presentations to student rooms; limited the number of student participants to ten; and required a registration procedure, which called for, among other things, the unanimous consent of all residents assigned to the room.[2] Plaintiffs amended their complaint to challenge both

---

**2.** The complete SUNY–Cortland "interim" regulations are set forth below:

COMMERCIAL PRESENTATIONS BY REPRESENTATIVES OF AMERICAN FUTURE SYSTEMS, INC.

The following regulations are established in accordance with the June 3, 1983 preliminary injunction Order entered by the Honorable Neal P. McCurn, U.S. District Judge for the Northern District of New York pending final determination in the *American Future Systems, Inc., et al. v. State University of New York College at Cortland, et. al.* case.

Where a student residing in College housing elects to invite an American Future Systems, Inc. representative into his/her room to conduct, host or participate in a commercial presentation, such presentation will be allowed only in accordance with the regulations outlined below. No commercial activity involving the consummation of sales will be allowed on the College premises. CONSUMMATION OF SALES SHALL INCLUDE ACTIVITY SUCH AS THE TRANSFER OF CASH, CHECKS OR MONEY ORDERS IN EXCHANGE FOR PRODUCTS; THE USE OF CREDIT CARDS FOR THE PURCHASE, LEASE OR RENTAL OF PRODUCTS, AND/OR ENTERING INTO AGREEMENTS (EITHER WRITTEN OR ORAL) FOR THE PURCHASE, LEASE OR RENTAL OF PRODUCTS. If violations occur in relation to this sales prohibition and/or compliance with these regulations, the resident who issued the invitation and all other residents involved may be subject to appropriate disciplinary action. American Future System, Inc.'s representative(s) may be subject to ejectment and may also be excluded from further entry into College premises.

TIME

Commercial presentations given by invited American Future Systems, Inc. representatives will be limited to certain hours. During the year when residence halls are open to students, such presentations are permitted between 2:00 and 9:00 P.M. except during exam periods, when they conflict with study hours established by individual residence hall governance committees.

PLACE

No commercial presentations by American Future Systems, Inc. representative(s) are allowed in common areas of the residence halls. Only presentations in student rooms-with written permission from all roommates/suitemates and in accordance with stated rules and regulations governing such presentations-will be permitted. The number of participants will be limited to ten (10).

MANNER

Commercial presentations by American Future Systems, Inc. representatives will be allowed if they are by resident invitation and if a registration form is satisfactorily completed. All information and signatures requested on the registration form must be provided and submitted to the Director of Residence Life or designee by 12:00 P.M. (Noon) of the working day *prior* to the presentation.

The resident who has invited the American Future Systems, Inc.'s representative into the residence hall to give a presentation is responsible for the conduct of his/her guest and must be present during the duration of the visit.

66–156 and the Cortland regulations.[3]

A non-jury trial was held in the Fall of 1986, and this court issued its findings of facts and conclusions of law on December 12, 1986. *Fox v. Bd. of Trustees*, 649 F.Supp. 1393 (N.D.N.Y.1986), *rev'd* 841 F.2d 1207 (2d Cir.1988). After reviewing the evidence, the court concluded that its preliminary determination that the speech involved was commercial speech and not pure speech was substantiated by the record. Id. at 1397–98. The court did not apply the *Central Hudson* test, however. Relying on several decisions that had been announced since the preliminary injunction motion in 1983, the court determined that the public forum analysis was appropriate. Id. at 1398–1400 (citing *Cornelius v. NAACP Legal Defense & Educ. Fund.*, 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985); *Perry Educ. Ass'n v. Perry Local Educators*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Calash v. City of Bridgeport*, 788 F.2d 80 (2d Cir.1986); *Glover v. Cole*, 762 F.2d 1197 (4th Cir.1985); *Chapman v. Thomas*, 743 F.2d 1056 (4th Cir.1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 160 (1985); *American Future Systems, Inc. v. Pennsylvania State University*, 752 F.2d 854, 870–71 (3d Cir.1984) (Adams, J., concurring), *cert. denied*, 473 U.S. 911, 105 S.Ct. 3537, 87 L.Ed.2d 660 (1985)). Because SUNY permitted social, cultural, and educational activities in dormitories while prohibiting commercial activities, the court concluded that dormitory rooms constituted public fora for social, cultural and educational activities, but non-public fora for commercial activities. *Fox*, 649 F.Supp. at 1400–1401. The court then determined that Resolution 66–156 was a reasonable, viewpoint neutral restriction on commercial speech in a limited public forum, and dismissed the complaint. *Id.* at 1401–1402. Since the court found the complete ban to be a constitutional restriction on speech, it declined to consider the claims in regard to the interim Cortland regulations. *Id.* at 1402.

The United States Court of Appeals for the Second Circuit has reversed and remanded. *Fox v. Bd. of Trustees*, 841 F.2d 1207 (2d Cir.1988). The Court of Appeals rejected this court's use of the public forum analysis noting that between trial and appeal "the focus of the case shifted" because AFS had dropped out as a party. *Id.* at 1208. The Court determined that:

> "[s]ince this case no longer involves the rights of third persons to gain access to state-owned property to give or receive speech, but rather the free speech rights of students who, as dormitory residents, have an undisputed right of access to their rooms as well as certain privacy rights, the public forum cases thought applicable by the district court are inapposite."

*Id.* at 1212. The Court then determined that the appropriate test to apply was the commercial speech test of *Central Hudson*. *Id.* at 1213.

Although the Court remanded the case for application of the *Central Hudson* test, it did so with some guidance. First, the Court agreed with this court's preliminary determination that AFS demonstrations concerned lawful activity and were not misleading, and that the proffered state interests of SUNY were substantial. *Fox*, 841 F.2d at 1213. Second, the court determined that the real inquiry on remand was whether the regulation directly advanced the State's interests, and if so, was not more extensive than necessary to further those interests. *Id.* at 1213–14. Third, the court determined that *Central Hudson's* "not more than necessary" language requires that the regulation be the "least restrictive means" for serving the governmental interests. *Id.* at 1213–14.

### DISCUSSION ON REMAND

▮ The first task on remand is to apply the last two steps of the *Central Hudson* standard to Resolution 66–156 in light of the facts developed at trial. The court

---

**3.** Other amendments were also made. The Presidents of SUNY–Albany, SUNY–Binghamton and SUNY–Potsdam were named defendants. Several student plaintiffs were added or dropped as their matriculation at the various state colleges changed. Kathy Rapp was also dropped as a plaintiff.

must determine: (1) whether Resolution 66–156 directly advances the State's interests of preventing crime on campus, protecting students from consumer exploitation, and preserving tranquility in the dormitories; and, (2) whether the Resolution is the least restrictive means for achieving those goals. Applying these tests there can be no question that Resolution 66–156 does not pass constitutional muster. Assuming, but not concluding, that the Resolution directly advances the State's interests, it is indisputable that it is not the least restrictive means for advancing those interests. As noted in this court's most recent opinion in this case, plaintiffs offered expert testimony that other means, less restrictive than a total ban on commercial activity, had been implemented at least one comparable university. *Fox*, 649 F.Supp. at 1401–1402. Defendants, on the other hand, offered no credible testimony as to why similar tailoring could not be accomplished at SUNY. Resolution 66–156 is overbroad, and is not the least restrictive means for meeting the proffered state interests. *See also American Future Sys*, 565 F.Supp. at 765–67.[4]

Having determined that Resolution 66–156 is unconstitutional, the court must now turn to plaintiffs challenge of the interim regulations of SUNY–Cortland.[5] Of course these regulations must also directly advance the State's interests and be the least restrictive means for doing so.[6] SUNY offered considerable uncontradicted testimony for the proposition that the regulations directly advance at least their interests in preventing crime and insuring tranquility on campus. Several SUNY administrators, including Dr. O'Leary, Dr. Murabito, and Mr. Franco, Vice-President for Student Affairs at SUNY–Cortland, testified that limiting access to the dormitories and keeping track of visitors provided a mechanism for maintaining tranquility and deterring crime. The interim regulations do limit access to the dormitories in that demonstrations are permitted only during certain hours and are restricted during examination times. These restrictions are directly related to the University's desires to provide a peaceful place for students to study. Moreover, the interim regulations require sales personnel to register prior to their visit. Such a registration procedure is directly related to the University's interest in deterring crime.

The more telling question, however, is whether the interim regulations are the least restrictive means for advancing the governmental interests. "If the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive." *Fox v. Bd. of Trustees*, 841 F.2d at 1214, citing *Central Hudson*, 447 U.S. at 564, 100 S.Ct. at 2350. It is incumbent upon the government to demonstrate that its interests cannot be protected adequately by a more limited regulation. 447 U.S. at 570, 100 S.Ct. at 2353. SUNY has not done so here. SUNY offered the testimony of only one witness who was involved with the formulation of the interim regulations: Raymond D. Franco, Assistant Vice–President for Student Affairs at SUNY–Cortland. Mr. Franco offered no testimony that a less restrictive regulation could not serve the interests of the State. In fact, Mr. Franco admitted that a less restrictive, though more expensive, manner for insuring student safety and tranquility in the form of a visitor checkpoint at every dormitory was available.[7] Moreover, no other defense witness testified that less restrictive regulations would fail the University's

---

**4.** The facts presented at trial were not substantially different than those presented to the court on the preliminary injunction motion. This court's application of the *Central Hudson* test on the preliminary injunction motion provides further support, therefore, for the conclusion that resolution 66–156 is an unconstitutional infringement on the plaintiffs' first amendment rights.

**5.** See *supra* note 2 and accompanying text.

**6.** In the decision on the preliminary injunction motion, this court commented that "reasonable" time, place and manner restrictions would be appropriate. The Second Circuit Court of Appeals has, however, mandated that the regulations be the "least restrictive" means available to achieve the states' goals. The State's burden is obviously much more onerous in this regard.

**7.** Franco did explain that even though this method was available, it was not used because of its higher cost, which had to be passed on to

purpose. On the other hand, plaintiffs offered the testimony of Mr. Howard Diamond, Special Assistant to the Chancellor at the University of Illinois, Urbana–Champaign. Mr. Diamond testified that his University shared the same interests as SUNY. But, it has accommodated those interests in a manner less restrictive than the interim regulations. It has prohibited commercial activities in the dormitories, except that students are permitted to invite salesmen into their rooms if they so choose. Once such an invitation is made, the commercial visitor is treated no differently than any other visitor. Defendants offered no testimony as to why a similar policy would not advance the interests of SUNY. Accordingly, the interim regulations also fail the fourth prong of the *Central Hudson* test.[8]

Both Resolution 66–156, as amended, and the interim regulations are hereby declared unconstitutional infringements on plaintiffs first amendment rights.[9]

IT IS SO ORDERED.

---

students. This court, in its last opinion, considered that rationale to be entirely reasonable. The Second Circuit has mandated, however, that the restriction need be the least restrictive, not just "reasonable." Under such an approach, cost is immaterial.

8. Plaintiffs made other arguments regarding the interim regulations. For example, they argued that providing separate treatment for AFS was an unconstitutional infringement on AFS' right

to equal protection. As the interim regulations are invalid under *Central Hudson,* as interpreted by the Second Circuit, the court need not reach these other arguments.

9. The plaintiffs' Verified Amended Complaint sought declaratory relief. It did not seek an injunction. It also sought reasonable attorneys fees and costs. Such an application, if made, will be entertained separately.