764 F.Supp. 747 (1991)
Todd FOX, Edward R. Detweiler, Stephanie Vaiano, James B. Cullen, Christine Marie Odell, Steven Gawley, Daniel Altman, Philip Jay Botwinik, Jeffrey S. Zellan and Jaclyn Bernstein, Plaintiffs,
v.
The BOARD OF TRUSTEES OF THE STATE UNIVERSITY OF NEW YORK, and Clifton R. Wharton, Jr., Individually and as Chancellor of the Board of Trustees and the State University of New York College at Cortland, and James M. Clark, Individually and as President of the College at Cortland, and the State University at Binghamton, and Clifford D. Clark, Individually and as President of the State University of New York at Binghamton, and Vincent O'Leary, Individually and as President of the State University of New York at Albany, and the State University of New York College of Arts and Sciences at Potsdam, and Humphrey Tomkin, Individually and as President of the College of Arts and Sciences at Potsdam, Defendants.
No. 82-CV-1363.
United States District Court, N.D. New York.
May 24, 1991.
*748 *749 Duane Morris & Heckscher, Philadelphia, Pa. (Henry T. Reath, Wayne A. Mack, Jr., Richard W. Riley, of counsel), for plaintiffs.
Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y. (O. Peter Sherwood, Sol. Gen., Peter H. Schiff, Deputy Sol. Gen., Lawrence L. Doolittle, Daniel Smirlock, Asst. Attys. Gen., of counsel), for defendants.

MEMORANDUM-DECISION AND ORDER
McCURN, Chief Judge.
After a protracted course of litigation, including review by the Supreme Court of the United States, this case is before the court for the fourth time. The court assumes familiarity with this case and will summarize only those facts and proceedings necessary to an understanding of the issues raised on this remand.
In 1982 American Future Systems, Inc. ("AFS")[1] and a student at the State University of New York at Cortland ("SUNY" or "the University")[2] commenced the present action challenging the constitutionality of SUNY Resolution No. 66-156 ("the Resolution"). The Resolution reads as follows:
No authorization will be given to private commercial enterprises to operate on State University campuses or in facilities furnished by the University other than to provide for food, legal beverages, campus bookstore, vending, linen supply, laundry, dry cleaning, banking, barber and beautician services and cultural events.
Claiming, inter alia, that the Resolution interfered with their first amendment free speech rights, plaintiffs sought a preliminary injunction permitting AFS to conduct group demonstrations in plaintiffs' dormitory rooms without interference.
This action first came before the court on plaintiffs' motion for a preliminary injunction. After making the initial determination that plaintiffs' activities constituted commercial speech, the court then engaged in the four-step analysis enunciated by the Supreme Court in Central Hudson Gas & Electric Corp. v. Public Service Com. of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).[3] This court first found that the conduct of AFS was lawful and not misleading.[4] The court went on to find that the interests defined by the University in "(1) preventing disruption; (2) protecting the safety and security of the students; (3) and protecting students from commercial exploitation ..." were substantial.[5] The court concluded, though, that the Resolution did not satisfy the final two requirements *750 of Central Hudson, in that it did not directly advance the governmental interests asserted, and it was more extensive than necessary to serve those interests.[6] In reaching that conclusion, the court remarked, "[t]here appears to be only an indirect link between the restriction of commercial speech ...," and the University's interests allegedly advanced by enforcement of the Resolution.[7]
In light of the foregoing, the court granted preliminary relief to plaintiffs. SUNY-Cortland then promulgated "interim" regulations, and the complaint was amended to include a challenge to those regulations as well.[8] Following a non-jury trial, this court held that the SUNY dormitories are nonpublic forums for purposes of commercial speech activity.[9] The court further held that the Resolution was reasonable in relation to the forum's purpose.[10] Accordingly, the court dismissed plaintiffs' complaint and granted judgment in defendants' favor.
Pending appeal to the Second Circuit, AFS was dropped as a party and proceeded strictly as an amicus, leaving only the student plaintiffs as appellants. The Second Circuit deemed that change in parties significant, explaining:
Since this case no longer involves the rights of third persons to gain access to state-owned property to give or receive speech, but rather the free speech rights of students who, as dormitory residents, have an undisputed right of access to their rooms as well as certain privacy rights, the public forum cases thought applicable by the district court are inapposite.[11]
The Second Circuit went on to apply the Central Hudson factors, deciding, in the words of Justice Scalia, "[t]hat it was unclear whether Resolution 66-156 directly advanced the State's asserted interests and whether, if it did, it was the least restrictive means to that end."[12] The Second Circuit therefore reversed this court's judgment and remanded for "a suitable order" based upon "appropriate findings."[13]
On remand, this court applied the Central Hudson test in a manner consistent with the Second Circuit's instructions in Fox II, finding that even if the Resolution directly advanced the University's asserted interests, it was not the least restrictive means for advancing those interests.[14] The court reached the same conclusion with respect to the interim regulations, and thus declared both the Resolution and the interim regulations to be "unconstitutional infringements."[15] On October 3, 1988, the same day that the decision was issued, the Supreme Court granted certiorari.[16] Consequently the proceedings were stayed, including enforcement of the court's order and judgment on remand, pending a decision by the Supreme Court.[17]
When the case eventually reached the Supreme Court, that Court agreed that the primary attack upon the Resolution pertained *751 to its application to commercial speech, and that Central Hudson provides the appropriate analytical framework. The Court observed, however, that the Resolution also reached some non-commercial speecha factor which neither this court nor the Circuit Court had considered.[18] While agreeing that the governmental interests advanced as justification for the Resolution were substantial,[19] the Supreme Court disagreed with the terms of the Second Circuit's remand. In particular, the Supreme Court differed with the Second Circuit's interpretation of the last element of the Central Hudson test.
After engaging in a comprehensive analysis of Supreme Court decisions involving government restrictions upon commercial speech, the Supreme Court explained:
What our decisions require is a `"fit" between the legislature's ends and the means chosen to accomplish those ends,' ...a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is `in proportion to the interest served,' ...; that employs not necessarily the least restrictive means but, ..., a means narrowly tailored to achieve the desired objective.[20]
The Court therefore reversed the judgment of the Second Circuit and remanded:
[f]or determination, pursuant to the standards described above, of the validity of this law's application to the commercial and noncommercial speech that is the subject of the complaint; and, if its application to speech in either such category is found to be valid, for determination whether its substantial overbreadth nonetheless makes it unenforceable.[21]
Incorporating that language, on September 26, 1989, the Second Circuit then issued a mandate remanding the action to this court. By direction of this court, the parties filed memorandums of law with the court setting forth their respective positions on the remand issues.

DISCUSSION

I. Mootness
Before undertaking a constitutional analysis of the Resolution, there is one critical issue which the court must first address and that is whether this action is now moot.[22] Defendants make a convincing argument that because the ten plaintiffs are no longer residents of SUNY dormitories, and in fact are no longer SUNY students, they have no "legally cognizable interest in the outcome," and thus the issues raised on this remand are no longer justiciable, rendering the case moot. Plaintiffs, without providing much analysis, proffer four reasons, which will be fully discussed herein, as to why this case is not moot, despite the fact that they have moved from the SUNY dormitories and *752 graduated. Plaintiffs further respond that, at a minimum, they should be allowed to file an amended complaint to join as plaintiffs a number of current students who, at least in the winter of 1990, were also elected student government leaders.[23] (Clearly, if the court permits such an amendment, it must hold in abeyance the remand issues until the complaint has been properly amended.)
A brief overview of the origins of the mootness doctrine will help to put in perspective the various arguments made by the parties regarding that doctrine. The concept of mootness is rooted in the "case or controversy" requirement found in Article III of the United States Constitution. See De Funis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974). The Supreme Court has explained that, for Article III purposes, "a case is moot when the issues presented are no longer `live' or the parties lack a legally cognizable interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), (quoting Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). In addition to the constitutional component of the mootness doctrine, there exists what has been described as "a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration." Chamber of Commerce v. U.S. Dept. of Energy, 627 F.2d 289, 291 (D.C.Cir.1980) (citing 13 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3533 at 266-70 (1975)). Thus, a case may be dismissed as moot, even when it has technically satisfied the Article III case or controversy requirement if "a controversy, ..., is so attentuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." Id. See also New York Guardian Mortgagee Corp. v. Cleland, 473 F.Supp. 409, 418 (S.D.N.Y.1979) (recognizing discretionary or prudential aspects of mootness doctrine). A defendant seeking to dismiss a case as moot, however, bears a heavy burden. United States v. W.T. Grant Co., 345 U.S. 629, 632-33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

A. Repeat and Evade Review
One long recognized exception to the mootness doctrine is that a matter which is "capable of repetition, yet evading review," will not be deemed moot. That exception was first clearly articulated in Southern Pacific Terminal Co. v. Interstate Commerce Com., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Southern Pacific involved a challenge to an Interstate Commerce Commission cease and desist order. The Supreme Court granted review of an otherwise moot issue in that case because the challenged order was of such short duration as to preclude litigation before its expiration, and because the same plaintiffs were likely to be affected by the same type of order in the future. Id. at 514-15, 31 S.Ct. at 283, 55 L.Ed. at 315-16.
In determining whether these plaintiffs may properly rely upon this exception, the court is guided by the test set forth in Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d. 350 (1975). In Weinstein the Supreme Court stated, "[i]n the absence of a class action, the `capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combine[]...." Id. at 149, 96 S.Ct. at 349. The first element, as defined by the Court, is that the challenged action must be "too short to be fully litigated prior to its cessation or expiration...." Id. Second, there must be "[a] reasonable expectation that the same complaining party [will] be subjected to the same action again." Id. With respect to this second element, the Supreme Court has interpreted "reasonable expectation" with varying degrees of probability ranging from "demonstrated probability" to "some likelihood." See Honig v. Doe, 484 U.S. 305, 318 n. 6, 108 S.Ct. 592, 601 n. 6, 98 L.Ed.2d 686 (1988).
*753 The plaintiffs in the present action are not entitled to rely upon this limited exception to the mootness doctrine, however, because they cannot show that the first element of Weinstein is satisfied here. The facts of the present case stand in sharp contrast to those in which courts have found that the first Weinstein element was met. In United States v. Johnson, 801 F.2d 597 (2d Cir.1986), for example, although the Court ultimately held that the issues raised on appeal were moot, it did recognize that the first element of Weinstein was established where the defendant "could not litigate the validity of the order compelling his testimony prior to its expiration." Id. at 601. Similarly, in Sloan v. Securities and Exchange Commission, 547 F.2d 152 (2d Cir.1976), aff'd on other grounds, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978), the Second Circuit concluded, "[b]ecause of the SEC's continuing policy of roll-over ten-day suspension orders, the harm to him [plaintiff] was `capable of repetition, yet evading review.'". Id. at 158.
In this action, on the other hand, the challenged action  the University's enforcement of the Resolution  is not the sort of action which, by reason of the inherently short nature of the opportunity for remedy, is likely forever to "evade review." It is true that this litigation has been lengthy so that the present plaintiffs have been unable to have the merits of their lawsuit finally resolved within the four years a student typically remains enrolled in a university. The difficult constitutional issues raised herein have, in large part, contributed to that delay however, and not the nature of the challenged action itself. The challenged action in and of itself is not so inherently short in duration that if a future SUNY student decided to challenge this same Resolution, that action would become moot again. See De Funis, 416 U.S. at 318-19, 94 S.Ct. at 1707, 40 L.Ed.2d 164 ("capable of repetition, yet evading review" exception inapplicable because there was no reason to suppose that future attacks on admissions' procedures of law school would evade review).
Indeed, given the fact that this court has now had the benefit of the Supreme Court's guidance with respect to the first amendment issues raised herein, a subsequent similar action would no doubt be swiftly resolved, and in any event certainly before the passage of an additional four years. This is not a situation where defendants have indicated their intent to rescind or substantially modify the Resolution so as to defeat the claims of these or subsequent plaintiffs.[24] Thus, because these plaintiffs have not shown that the challenged action is "too short to be fully litigated prior to its cessation or expiration," they cannot be permitted to rely on the "capable of repetition, yet evading review" exception to avoid application of the mootness doctrine.
As previously stated, the Supreme Court has specifically required that the two elements defined in Weinstein must "combine" before a plaintiff may rely on the "capable of repetition, yet evading review," exception to the mootness doctrine. Therefore, the fact that these plaintiffs cannot satisfy the first element of the Weinstein test is fatal to their argument that the "capable of repetition, yet evading review," exception applies here. Consequently the court need not, and will not, consider whether plaintiffs are able to met the second element of Weinstein.

B. Representational Capacity
Plaintiffs' second response to the mootness argument by defendants is that they are litigating "in a representational capacity for the student government, and thus their claims cannot be mooted even though plaintiffs themselves have graduated."[25] Plaintiffs, without offering any analysis, simply cite two cases which they believe support this proposition. In the court's view, however, those cases are readily distinguishable from the present one.
*754 In Trachtman v. Anker, 563 F.2d 512 (2d Cir.1977), cert. denied, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978), at the time the action was commenced, one of the plaintiffs was a student in his senior year at Stuyvesant High School, and editor-in-chief of a student publication there. (The other plaintiff was the student's father.) On appeal the Second Circuit observed that because the high school's graduation was scheduled fairly soon after argument of the appeal, the plaintiff student "may no longer be a member of the student body."[26] That fact, in the Court's view, did not moot the case because the student plaintiff "[w]as acting not only as a student but in a representational capacity as editor-in-chief of [the student publication]."[27] The Court further explained that "[t]he complaint requests relief on behalf of `plaintiffs and other [sic] similarly situated,'" and thus, the Court reasoned that even though "[t]he complaint did not formally so assert, Trachtman [the student plaintiff] was litigating in a representational capacity."[28] Therefore, the Court held that although the plaintiff student had graduated, his case did not become moot because, inter alia, "[p]laintiffs may be considered as acting on behalf of a student association and its members who have a continuing stake in this litigation."[29]
Plaintiffs are also relying upon Brandon v. Board of Education, 487 F.Supp. 1219 (N.D.N.Y.), aff'd, 635 F.2d 971 (2d Cir. 1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981), a prior decision of this court. In Brandon a group of high school students brought a lawsuit challenging defendants' refusal to allow them to use a school room in which to conduct daily pray meetings before the start of the school day. Defendants raised the mootness claim in an amended answer with respect to three students who, since the filing of the complaint, had graduated. This court held, and the Second Circuit agreed, that dismissal on mootness grounds was not required because, for one reason,[30] "[t]he pleadings indicate that this action was commenced by the plaintiffs, not only on their own behalf but as representatives of the organization `Students for Voluntary Prayer' and on behalf of all students similarly situated."[31] On appeal, the Second Circuit also observed that because plaintiffs' claims for monetary damages "remain[ed] extant," no mootness problem existed.[32]
Apparently plaintiffs believe that they are entitled to rely upon Trachtman and Brandon because this group of plaintiffs is comprised, in part, of students who are (or were) officers and other elected representatives of the student government.[33] Plaintiffs also note that several student organizations have supported plaintiffs' position as amici curiae before the appellate courts.[34] Plaintiffs completely disregard the fact though that, unlike Trachtman and Brandon, the pleadings before the court here do not demonstrate that plaintiffs are bringing this action on behalf of themselves and all others similarly situated. Nor is any particular student association named as a plaintiff in this action.[35] Finally, plaintiffs obviously have not made any attempt to have a class certified under Fed.Rule Civ.Proc. 23.
*755 Moreover, even if plaintiffs' conduct during the course of this litigation to date could somehow be interpreted to mean that plaintiffs have been proceeding as a Rule 23 class, nonetheless, they could not overcome defendants' mootness argument on that basis. That is so because in Board of School Com'rs of City of Indianapolis v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), the Supreme Court held that even where there was an attempt to certify the class under Rule 23, the case was nevertheless moot because there was not full compliance with the certification requirements of Rule 23. The plaintiffs in Jacobs had purportedly instituted an action on "behalf of all high school students attending Indianapolis public schools."[36] The Supreme Court explained that in such a case, "[t]he need for definition of the class purported to be represented by the named plaintiffs is especially important ... [because] the litigation is likely to become moot as to the initially named plaintiffs prior to the exhaustion of appellate review."[37]

C. Overbreadth Challenge
Based solely upon Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), plaintiffs assert that this action is not moot because in addition to challenging the constitutionality of the Resolution as it applies to them, their constitutional claim also includes a claim that it is overbroad.[38] In Broadrick, the Supreme Court relaxed its prudential rules of standing by making a limited exception to the general rule that "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional."[39] Specifically, in Broadrick the Court held that that rule does not apply when a "statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."[40]
Relying upon the fact that ordinarily overbreadth challenges, by their very nature, involve the rights of third persons who are not parties to the action, plaintiffs believe their overbreadth claim can save this case from mootness. There is at least one fundamental flaw with that position; specifically, plaintiffs are conveniently disregarding the fact that, at least up until the time defendants raised the issue of mootness, the overbreadth challenge related solely to the application of the Resolution to these student plaintiffs. In fact, the Supreme Court recognized as much when it stated:
Respondents' [plaintiffs'] invocation of the doctrine [overbreadth] in the present case is unusual in that the asserted extensions of Resolution 66-156 beyond commercial speech that are the basis for their overbreadth challenge are not hypothetical applications to third parties, but applications to the student respondents themselves, which were part of the subject of the complaint and of the testimony adduced at trial.
492 U.S. at 483, 109 S.Ct. at 3036-37, 106 L.Ed.2d 388 (emphasis added). The Court then discussed the origins of the first amendment overbreadth doctrine, concluding that it has potential applicability to the unique facts of this case because "[w]hile the overbreadth doctrine was born as an *756 expansion of the law of standing, it would produce absurd results to limit its application strictly to that context." Id. at 483, 109 S.Ct. at 3037, 106 L.Ed.2d 388.
Thus, assuming arguendo that an overbreadth challenge would operate to defeat plaintiffs' apparent mootness problem, these plaintiffs cannot make such an argument. That is so because they have not sought to invoke the overbreadth doctrine on behalf of third parties, such as students currently enrolled at the University whose rights may arguably be affected by enforcement of this Resolution. Rather, as the Supreme Court observed, plaintiffs have consistently limited their overbreadth challenge to only themselves. Now, at this late date, plaintiffs cannot broaden the scope of their constitutional challenge simply as a means of avoiding the fact that their action may have become moot.

D. Attorneys' Fees, Costs, and Nominal Damages
It is true that "`[c]laims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable.'" Stokes v. Wurtsboro, 818 F.2d 4, 6 (2d Cir.1987) (quoting 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533.3 at 262 (1984 ed.)) (and cases cited therein). Plaintiffs' verified amended complaint is completely void, however, of any claims for monetary damages. Despite that fact, plaintiffs maintain that they are seeking attorney's fees, costs, and nominal damages, and thus those claims prevent their claim for declaratory relief from being moot. A closer examination of the amended complaint, as well as an examination of the applicable law reveals, however, that this too is an untenable position.
First of all, while there is case support for the proposition that even "nominal damages" will save a case from mootness,[41] there is absolutely no specific mention in plaintiffs' verified amended complaint of nominal damages. Nor can a request for such damages be inferred from the language of that complaint. Perhaps plaintiffs are under the impression that this court will construe the standard, boilerplate language in their "wherefore" clause seeking "such other relief as the Court deems just and proper,"[42] as a request for nominal damages, and then rely on the same to salvage this case from mootness. If so, plaintiffs are mistaken.
In Perrucci v. Gaffey, 450 F.2d 356 (2d Cir.1971), there were no proper damages allegations averred in the complaint; "the allegation was limited to `expenses and loss' incurred by plaintiff in bringing the action." Id. at 358. Plaintiff had, however, "[a]ttempt[ed] to breath life into a moribund dispute,"[43] after the court issued a memorandum decision, sua sponte dismissing plaintiff's action, by amending his complaint to allege damages in excess of $10,000 "exclusive of interest and costs." Id. Despite that amendment, the Second Circuit concluded that the appeal was moot and that the district court should have dismissed the action for that reason. Id. In light of Perrucci, this court simply cannot read into plaintiffs' amended complaint a claim for damages, nominal or otherwise, where none exists.[44]
Nor can plaintiffs save this action from mootness based upon their attorneys' fees claim. A request for attorney's fees will *757 not preserve a case which otherwise has become moot on appeal. See Washington Market Co. v. District of Columbia, 137 U.S. 62, 11 S.Ct. 4, 34 L.Ed. 572 (1890). "The question of attorney's fees is ancillary to the underlying action and survives independently under the Court's equitable jurisdiction." United States v. Ford, 650 F.2d 1141, 1144 (9th Cir.1981), cert. denied sub nom., Midwest Growers Cooperative v. United States, 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982). "Thus a determination of mootness neither precludes nor is precluded by an award of attorneys' fees." Doe v. Marshall, 622 F.2d 118, 120 (5th Cir.1980), cert. denied, 462 U.S. 1119, 103 S.Ct. 3087, 77 L.Ed.2d 1349 (1983). The Supreme Court has soundly reasoned, however, that:
[An] interest in attorney's fees is ... insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim,.... Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs.
Lewis v. Continental Bank Corp., 494 U.S. 472, 110 S.Ct. 1249, 1255, 108 L.Ed.2d 400 (1990) (citations omitted) (emphasis added). Were this court to proceed, as plaintiffs suggest, and decide the constitutional issue based on the existence of the attorneys' fees claim, it would be acting in direct contravention of Lewis; and that it cannot do. Thus, the existence of plaintiffs' attorneys' fees claim cannot defeat what appears to be an otherwise moot case.
Finally, in his dissenting opinion in Bank of Marin v. England, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), Justice Fortas points to "[a]n unbroken line of cases [which] establish[] the rule that controversy as to costs alone does not salvage an otherwise moot case." Id. at 111, n. 1, 87 S.Ct. at 281, n. 1, 17 L.Ed.2d 197. Consequently, as with the attorneys' fees claim, the mere fact that plaintiffs are also seeking costs cannot save their case from becoming moot.
In sum, because plaintiffs have not requested damages, and because neither a claim for costs nor a claim for attorneys' fees precludes a finding of mootness, plaintiffs cannot overcome defendants' mootness argument by relying on the existence of those claims in their amended complaint.

II. Amendment of the Complaint
Having agreed with defendants that plaintiffs' graduation and departure from SUNY dormitories renders this action moot, the court must now confront plaintiffs' assertion that they should be allowed to amend their complaint so as to avoid dismissal of the action on mootness grounds.[45] According to Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." The obvious intent of that language is to evince a bias in favor of granting leave to amend. The Supreme Court has made clear that "this mandate is to be heeded," and that leave to amend should be permitted in the absence of an apparent or declared reason, such as undue delay, bad faith, or undue prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
The Second Circuit has indicated that the last factor  undue prejudice  is "perhaps most important." State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981). And, it has been recognized that the party opposing the amendment has the burden of showing prejudice. In Re Gallaudet, 40 B.R. 828, 830 (Bankr.Vt. 1984) (citing Beeck v. Aquaslide `N' Dive Corp., 562 F.2d 537, 540 (8th Cir.1977)). The court may also consider judicial economy *758 and the most expeditious way to dispose of the merits of the litigation. See generally Fed.R.Civ.P. 1 (rules to be construed "to secure the just, speedy, and inexpensive determination of every action").
It should be noted that mere delay alone will not suffice as a basis for denying the right to amend. Richardson Greenshields Secur., Inc. v. Mui-Hin Lau, 825 F.2d 647, 653 n. 6 (2d Cir.1987). In the context of amending a complaint for example, parties have been allowed to assert new claims long after they acquired the facts necessary to support such claims. See, e.g., Middle Atlantic Utilities Co. v. S.M.W. Development Corp., 392 F.2d 380, 385 (2d Cir.1968) (amendment allowed after three year interval even though plaintiff was aware of facts supporting new claims two years before filing of original complaint). Finally, when considering a motion to amend, district courts in this Circuit are guided, in part, by United States on behalf of Maritime Admin. v. Continental Illinois Nat. Bank and Trust, 889 F.2d 1248 (2d Cir.1989). In Continental Illinois, the Second Circuit explained:
As Foman makes clear, the denial of leave to amend a pleading may be overturned only if the denial constitutes an abuse of the district court's discretion. ... On the other hand, as Foman makes equally and explicitly clear, that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing `spirit of the Federal Rules.'
Id. at 1254 (citations omitted).
The only objection to amending the complaint seriously pressed by defendants is their claim of undue prejudice. In particular, defendants suggest that allowing amendment of the complaint to name new plaintiffs here would require them "[t]o guess at the nature of their grievances and the gravamen of their claims...."[46] That assertion simply is not supported by the facts, however. The four proposed plaintiffs would be relying on the same amended complaint as are the current plaintiffs.[47] Moreover, plaintiffs' counsel has emphatically stated:
Any new Plaintiffs that join in the existing complaint accept the contentions advanced and argued before the United States Supreme Court by the existing Plaintiffs. No effort is being made by either the present or the substituted Plaintiffs to broaden or modify those contentions....[48]
In light of that unequivocal statement, there is no reason to believe, and defendants have not asserted, that they will have to engage in additional expense or discovery as a result of permitting the amendment. Thus, where the issues remain identical and no new or additional claims are being added, and where the proposed plaintiffs are alleging the same injury as did the original plaintiffs, the court is not persuaded that defendants have met their burden of showing prejudice. Additionally, in the absence of prejudice to defendants, granting plaintiffs' request will fulfill the purpose of Rule 15(a), which is "[t]o permit a final decision on the merits rather than on procedural niceties,"[49] and result in a more expeditious resolution of this action.

CONCLUSION
This case, involving important first amendment issues, has been moving through the federal courts for nine years. There is little doubt that plaintiffs could have and probably should have been certified as a class pursuant to Fed.R.Civ.Pro. 23 at the inception of this action. Not having done so, this matter is in danger of being dismissed on the mootness grounds.
Plaintiffs have offered several theories to avoid mootness; but, as discussed herein, they cannot prevail on any of those theories. Their claim that this action is *759 "capable of repetition, yet evading review" offers, at best, a tenuous application of that doctrine. Plaintiffs statement that they are litigating in a representational capacity simply is not supported by the record. Plaintiffs' overbreadth argument is similarly unavailing. Throughout this litigation plaintiffs have argued that doctrine only insofar as the Resolution is allegedly overbroad with respect to their rights  not, as is typically done, with respect to the rights of unnamed third parties. And so, given the manner in which plaintiffs chose to present this claim, its mere existence cannot now salvage this case from becoming moot. Finally, never having requested or sought damages, plaintiffs cannot rely on such a claim to evade a finding of mootness; nor are their claims for attorneys' fees and costs, standing alone, sufficient to keep this case alive. Survival of jurisdiction then is necessarily predicated on the court's favorable treatment of plaintiffs' request to amend their complaint to add current SUNY students as plaintiffs. To grant plaintiffs leave to amend their complaint will cause no prejudice to the defendants and will advance this matter to a resolution on its merits.
Accordingly:
(1) Plaintiffs are granted leave to file within thirty (30) days of the date hereof an amended complaint adding student plaintiffs as requested;[50]
(2) Defendants shall file an amended answer as required by the Federal Rules of Civil Procedure; and
(3) Upon joinder of issue the court will proceed to consider and rule on the remaining issues on remand.
No further briefing is required or permitted.
IT IS SO ORDERED.
NOTES
[1] AFS is a corporation engaged in selling cookware, china, crystal, and silverware to college students through group demonstrations.
[2] Todd Fox, a SUNY student, was denied permission to host an AFS sponsored cookware demonstration.
[3] In Central Hudson the Supreme Court articulated several factors which courts must examine when considering the constitutionality of government regulation of commercial speech:

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
447 U.S. at 567, 100 S.Ct. at 2351, 65 L.Ed.2d 341.
[4] American Future Systems v. State University of New York College, 565 F.Supp. 754, 763-64 (N.D. N.Y.1983) ("AFS v. SUNY").
[5] Id. at 764-65.
[6] Id. at 767.
[7] Id. at 765.
[8] See Fox v. Board of Trustees, 695 F.Supp. 1409, 1411 n. 2 (N.D.N.Y.1988) ("Fox III").
[9] Fox v. Board of Trustees, 649 F.Supp. 1393, 1400-01 (N.D.N.Y.1986) ("Fox I").
[10] Id. at 1401-02. In light of that holding the court refused to separately consider plaintiffs' constitutional challenge to the interim regulations.
[11] Fox v. Board of Trustees, 841 F.2d 1207, 1212 (2d Cir.1988) ("Fox II").
[12] Board of Trustees v. Fox, 492 U.S. 469, 109 S.Ct. 3028, 3031, 106 L.Ed.2d 388 (1989) ("Fox IV").
[13] Fox II, 841 F.2d at 1214.
[14] Fox III, 695 F.Supp. at 1413.
[15] Id. at 1413-14.
[16] Board of Trustees v. Fox, 488 U.S. 815, 109 S.Ct. 52, 102 L.Ed.2d 31 (1988).
[17] See Stipulation, No. 82-CV-1363 (November 23, 1988).
[18] Fox IV, 492 U.S. at 483-85, 109 S.Ct. at 3037, 106 L.Ed.2d 388.
[19] Id. at 474-76, 109 S.Ct. at 3032, 106 L.Ed.2d at 400-01.
[20] Id. at 480, 109 S.Ct. at 3035, 106 L.Ed.2d at 403 (citations omitted).
[21] Id. at 486, 109 S.Ct. at 3038, 106 L.Ed.2d at 407.
[22] In their initial brief, plaintiffs imply that because defendants did not raise the mootness issue until "this late date," and because they did not raise it on appeal, the court should disregard that issue. Brief for the Plaintiffs at 1, n. 1. Plaintiffs overlook the fact, however, that mootness is a jurisdictional defect. The court therefore would have had an obligation to consider it sua sponte, even if defendants did not raise the issue, and that obligation is a continuing one. Seibert v. Sperry Rand Corp., 586 F.2d 949, 951 (2d Cir.1978) (citing North Carolina v. Rice, 404 U.S. 244, 245-46, 92 S.Ct. 402, 403-04, 30 L.Ed.2d 413 (1971)). See also R.C. Bigelow, Inc. v. Unilever N.V., 867 F.2d 102, 105 (2d Cir.), cert. denied, ___ U.S. ___, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989) ("The case must be `live' at every stage of the proceeding, including the appeal."). Thus, at what point in the litigation the mootness issue is raised or whether it is even raised at all by the parties is of little or no consequence. See Barilla v. Ervin, 886 F.2d 1514, 1519 (9th Cir.1989) ("[c]ourt cannot be divested of its obligation to consider the issue of mootness on the grounds that the timing or manner in which a party has raised the issue is somehow procedurally improper.")
[23] See Reply Brief for Plaintiffs at 8 n. 12 and Ex. A thereto.
[24] See Letter of Henry T. Reath to Court (March 13, 1990) at 1.
[25] Reply Brief for the Plaintiffs at 7.
[26] Id. at 514, n. 1.
[27] Id.
[28] Id.
[29] Id.
[30] This court also relied on the fact that at the time of plaintiffs' summary judgment motion, there were still plaintiffs to the action who were then enrolled in school. Brandon, 487 F.Supp. at 1224. But, by the time the case reached the Second Circuit, all of the plaintiffs had graduated. Brandon, 635 F.2d at 973 n. 1.
[31] Id. at 1224-25 (citing Trachtman, 563 F.2d 512, 514 n. 1).
[32] Brandon, 635 F.2d at 973, n. 1
[33] Reply Brief at 7, n. 11.
[34] Id.
[35] In the context of standing, in Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1977), the Supreme Court made clear that the association itself must bring the action on behalf of its members. Id. at 515, 95 S.Ct. at 2213, 45 L.Ed.2d 343 (emphasis added).
[36] 420 U.S. at 131, 95 S.Ct. at 850, 43 L.Ed.2d 74.
[37] Id. at 130, 95 S.Ct. at 850, 43 L.Ed.2d 74.
[38] In Fox IV the Supreme Court explained the difference between an as-applied and an overbreadth constitutional challenge as follows:

[t]he rule employed in as-applied analysis that a statute regulating commercial speech must be `narrowly tailored,' ..., prevents a statute from being overbroad. The overbreadth doctrine differs from that rule principally in this: The person invoking the commercial-speech narrow-tailoring rule asserts that the acts of his that are the subject of the litigation fall outside what a properly drawn prohibition could cover.
492 U.S. at 482, 109 S.Ct. at 3036, 106 L.Ed.2d 388 (emphasis in original).
[39] United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960) (citing cases).
[40] Broadrick, 413 U.S. at 612, 93 S.Ct. at 2916, 37 L.Ed.2d 830.
[41] See Davis v. Village Park II Realty Co., 578 F.2d 461, 463 (2d Cir.1978) (emphasis added) ("The availability of either nominal damages or substantial damages is sufficient to prevent this case from becoming moot.") (citing Powell v. McCormack, 395 U.S. 486, 495-500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)); and Steinberg v. U.S. Dept. of Agriculture, 613 F.Supp. 432, 436 (E.D.N.Y.1984) ("Since there is a possible claim for at least nominal damages, it is appropriate to look beyond defendants' mootness argument, and to view the viability of plaintiffs' claim on substantive grounds.")
[42] See Verified Amended Complaint.
[43] McCabe v. Nassau County Medical Center, 453 F.2d 698, 702 (2d Cir.1971).
[44] Plaintiffs reliance on Brandon, supra, is completely misplaced. In sharp contrast to the present case, in Brandon plaintiffs' claim for relief included a "sizable demand for damages," which, inter alia, prevented it from becoming moot. Brandon, 487 F.Supp. at 1225.
[45] Although plaintiffs did not file a formal notice of motion seeking leave to amend, they did make that specific request in their Reply Brief, and the court will treat that request as a motion without requiring the usual separate notice of motion. See Reply Brief at 8, n. 12. Defendants will not be prejudiced by this because it seems that they too treated plaintiffs' informal request as a motion, or at least responded to it as such.
[46] Letter from State Assistant Attorney General Daniel Smirlock to Court (March 8, 1990).
[47] See Reply Brief, Ex. A thereto (affidavits of proposed new plaintiffs).
[48] Letter from plaintiffs' counsel, Henry T. Reath (March 13, 1990).
[49] See Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).
[50] Unless, of course, those students have also graduated. In that event, plaintiffs' counsel may substitute appropriate current SUNY students.